ROBERT S. MᶜINTYRE, Admr.

*v.*

LEVI SHOLTY, Admr.

*Filed at Springfield September 27, 1887.*

1. INSANE PERSON—*liability for torts.* Although a lunatic or insane person is not punishable criminally, he is liable in a civil action for any tort he may commit.

2. SAME—*evidence in an action for an injury by the tort of a lunatic.* In an action by the personal representative of a person wrongfully killed, against the estate of the party killing, to recover compensation for the

death, evidence of the insanity of the latter party at the time of his wrongful act causing the death, is inadmissible when offered in defence of the action.

3. SAME—*measure of damages—in torts by a lunatic.* A lunatic having no will of his own, and his acts lacking the element of intention, the only proper measure of damages in an action against him for a wrong, is the mere compensation of the party injured. Punishment is not the object of the law when persons unsound in mind are the wrongdoers.

4. PRACTICE—*trial by court—proposition of law.* If the defendant in an action on the case to recover for the death of plaintiff's intestate, on a trial by the court without a jury, desires to save the question of the negligence of the deceased as a defence, he should submit to the court a proposition, to be held as law, embodying his theory of contributory negligence as applicable to the facts of the case, in accordance with section 41 of the Practice act. In the absence of such a proposition the question will not properly arise in this court.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding.

Messrs. BLADES & NEVILLE, for the plaintiff in error:

On the question of the liability of an insane person for his torts, see Taylor's Principles and Practice of Medical Jurisprudence, (ed. 1883,) 463; Hammond's Diseases of the Nervous System, 316, 317; Cooley on Torts, 341, 80, and cases cited; Sedgwick on Damages, (ed. 1858,) 481; note to *Vincent* v. *Stinchour,* 29 Am. Dec. (7 Vt. 62.) 146; *Goodwin* v. *Cherely,* 4 H. & N. 631.

Messrs. KERRICK, LUCAS & SPENCER, and Messrs. TIPTON & BEAVER, for the defendant in error:

Lunatics are liable, civilly, for all torts or wrongs committed by them, except for slander while totally deranged. (*Bryant* v. *Jackson,* 6 Humph. 199.) This is the exception. The following authorities declare the rule: *Weaver* v. *Ward,* Hob. 134; *Cross* v. *Andrews,* Cro. Eliz. 622; *Cross* v. *Kent,* 32 Md. 531; *Krom* v. *Schoonmaker,* 3 Barb. 649; *Williams* v. *Cameron,* 26 id. 172; *Harfield* v. *Roper,* 21 Wend. 615; *Morse* v. *Craw-*

*ford,* 17 Vt. 499 ; *Bush* v. *Pettibone,* 4 N. Y. 300 ; *Behrens* v. *McKenzie,* 23 Iowa, 333 ; *Bank* v. *Moore,* 78 Pa. St. 407 ; *Ex parte Leighton,* 14 Mass, 207 ; Ewell's Leading Cases, 635 ; 2 Saunder's Pl. and Ev. 318, 1163 ; 1 Chitty's Pl. 76 ; Cooley on Torts, 99 ; Shearman & Redfield on Negligence, 51, 57 ; Broom's Com. 684, 857.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action of trespass brought by defendant in error against plaintiff in error in the circuit court of McLean county under the "Act requiring compensation for causing death by wrongful act, neglect or default," being chapter 70 of the Revised Statutes, entitled "Injuries." (Hurd's Rev. Stat. 1885, p. 695.) Jury was waived by agreement and the case was tried, without a jury, before the judge of the circuit court, who gave judgment for the plaintiff for $2500. This judgment has been affirmed by the Appellate Court, and is brought before us for review by writ of error to the latter court.

Hannah Sholty was the wife of Levi Sholty, a farmer living in McLean county near Bloomington. About February 17, 1886, a workingman upon Levi Sholty's farm discovered a man in the barn, who, to all appearances, had been concealing himself there for some time. The person so concealed is proven to have been defendant's intestate, Benjamin D. Sholty, a brother of Levi Sholty. Some effort seems to have been made on February 17 or 18 to get the officers of the law in Bloomington to go out to the farm and arrest Benjamin D. Sholty, called by the witnesses David Sholty. This effort, however, failed. Accordingly, Levi Sholty and his hired man and a number of his neighbors gathered at his house on the afternoon of February 18, 1886, for the purpose of watching for the intruder and getting him out of his hiding place. The barn was forty or fifty feet wide and from eighty to one hundred feet long. It was situated about one hundred and fifty or two hundred feet north-west from the house. The granary

was in the western end of the barn, and, hence, in the end that was farthest from the house.

About six o'clock in the evening David Sholty was discovered in the granary by his brother Levi and one McCoy, who were on watch just outside of the granary door. He shot at them twice with a pistol while they were trying to prevent his escape and to capture him. Others, who were waiting in the house, came to their assistance. A rope was obtained with the intention of tying him, if captured. Presently there was a cry of fire and flames were seen to be breaking out at the eastern end of the barn, being the end nearest towards the house. At this time Mrs. Hannah Sholty, plaintiff's intestate, went from the house towards the barn and had advanced about half of the distance between the two, when David Sholty appeared in the door at the eastern end of the barn with a shot-gun. He was plainly visible in the light made by the fire that had broken out. He called upon Mrs. Sholty and her daughter, Mary, who was with her, to stop. They stopped, turned and had advanced a few feet on their way back towards the house, when David Sholty fired at them with the gun in his hand. Both were shot. The daughter was wounded in the wrist and the mother was killed. This action is brought by her husband, as administrator of her estate, to recover damages for her death against the administrator of the estate of David Sholty, who is said to have perished in the flames of the burning barn.

The defendant introduced no testimony, except that the examination of one witness was begun and abandoned after a few preliminary questions, on account of the ruling of the court, as hereafter stated.

The defence proposed to show by the witness on the stand and by others there present in court, that defendant's intestate, Benjamin D. Sholty, was insane at the time Mrs. Sholty was killed. The court refused to receive evidence of his insanity and exception was taken to the ruling. The question presented

relates to the liability of an insane person for injuries committed by him.

It is well settled that, though a lunatic is not punishable criminally, he is liable in a civil action for any tort he may commit. However justly this doctrine may have been originally subject to criticism on the grounds of reason and principle, it is now too firmly supported by the weight of authority to be disturbed. It is the outcome of the principle, that, in trespass, the intent is not conclusive. Mr. Sedgwick, in his work on Damages, (marg. page 456,) says that, on principle, a lunatic should not be held liable for his tortious acts. Opposed to his view, however, is a majority of the decisions and text writers.

There certainly can be nothing wrong or unjust in a verdict, which merely gives compensation for the actual loss resulting from an injury inflicted by a lunatic. He has properly no will. His acts lack the element of intent or intention. Hence, it would seem to follow, that the only proper measure of damages in an action against him for a wrong is the mere compensation of the party injured. Punishment is not the object of the law when persons unsound in mind are the wrongdoers.

There is, to be sure, an appearance of hardship in compelling one to respond for that which he is unable to avoid for want of the control of reason. But the question of liability in these cases is one of public policy. If an insane person is not held liable for his torts, those interested in his estate, as relatives or otherwise, might not have a sufficient motive to so take care of him as to deprive him of opportunities for inflicting injuries upon others. There is more injustice in denying to the injured party the recovery of damages for the wrong suffered by him, than there is in calling upon the relatives or friends of the lunatic to pay the expense of his confinement, if he has an estate ample enough for that purpose. The liability of lunatics for their torts tends to secure a more

efficient custody and guardianship of their persons. Again, if parties can escape the consequences of their injurious acts upon the plea of lunacy, there will be a strong temptation to simulate insanity with a view of masking the malice and revenge of an evil heart. The views here expressed are sustained by the following authorities: Cooley on Torts, 99-103; 2 Saunder's Pl. and Ev. 318; Shearman & Redfield on Negligence, sec. 57; *Weaver* v. *Ward*, Hob. 134; *Morse* v. *Crawford*, 17 Vt. 499; *Behrens* v. *McKenzie*, 23 Iowa, 333; *Krom* v. *Schoonmaker*, 3 Barb. 647, also cases in note to said case in Ewell's Leading Cases, 642. In the light of the principles thus announced, we find no error in the ruling of the circuit court upon this subject.

Plaintiff in error also contends that there should have been no recovery in this case because of alleged contributory negligence on the part of Mrs. Sholty. It is claimed that she knew of her brother-in-law's madness and that he was armed when she started to go from the house towards the stable, and that, by doing so under the circumstances, she was guilty of a want of proper care and prudence. We forbear to express any opinion as to whether or not there could be any such thing as contributory negligence in a case of this kind and under such circumstances as are herein disclosed. It is sufficient to say, that there is a considerable amount of evidence in the case bearing upon this question. If it could be properly raised, the facts necessary to do so were fully developed in the testimony presented to the court by the plaintiff below. Therefore, plaintiff in error should have submitted to the trial court a proposition to be held as law, embodying his theory of contributory negligence as applicable to the facts of the case, in accordance with section 41 of the Practice act. (Hurd's Rev. Stat. 1885, p. 904.) He did not do so, and hence the question is not properly before us for our consideration.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*