RUTH VOSNOS, Adm'r of the Estate of John D. Vosnos, Deceased, Plaintiff-Appellant, *v.* DANIEL PERRY, a/k/a Demetrius Perry, Defendant-Appellee.

First District (4th Division)   No. 61512

Opinion filed November 10, 1976.

Kavathas and Castanes and Peter W. Boznos, both of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Plaintiff, Ruth Vosnos, administrator of the estate of John D. Vosnos, deceased, brought a wrongful death action for the death of John D. Vosnos. The defendant, Daniel Perry, filed an affirmative defense based on insanity. The parties submitted the determination of the affirmative defense to the trial court on a stipulation of facts. The trial court found the affirmative defense a valid defense to the cause of action and entered a judgment in favor of the defendant and against the plaintiff. From this judgment plaintiff appeals.

The issue presented for review is whether unrebutted proof of the defendant's lack of capacity to form a criminal intent to commit murder is a complete defense to an accompanying action for wrongful death.

As per stipulation of the parties, the facts are undisputed.

On July 8, 1971, the defendant did shoot, with a gun, the decedent, John D. Vosnos, who died as a result of the gunshot wounds.

Defendant was charged with the murder of the decedent and during the trial on the charge of murder Dr. John R. Adams appeared and testified.

Dr. Adams is a psychiatrist who had treated the defendant from 1957 to 1959. Following the occurrence in question, Dr. Adams saw and treated the defendant and diagnosed the defendant's condition as one of "encapsulated paranoia with depressive features." An encapsulated paranoia is a type of paranoia where disturbances in mood and in behavior are only found in those areas that are touched by particular preoccupations or the particular obsessions. On the date in question Dr. Adams was of the opinion the defendant's condition was not under control and the defendant lacked the substantial capacity to either appreciate the criminality of his conduct or to conform his conduct to the requirement of the law.

The plaintiff stipulated that if called to testify, Dr. Adams would testify in conformity with his testimony at the defendant's criminal trial and plaintiff would not offer any competent evidence to rebut said testimony and would stand mute as to the affirmative defense.

The court entered an order finding the issues in favor of the defendant and against the plaintiff, who now claims error.

An analysis of the law in regard to the issue presented here must revolve around the Illinois Supreme Court decision in *McIntyre v. Sholty* (1887), 121 Ill. 660. There, the court was asked to reverse the ruling of a trial court preventing the defendant, in a wrongful death action, from raising the defense of insanity. In affirming, the court succinctly stated the view of the Illinois courts on the subject:

> "It is well settled that, though a lunatic is not punishable criminally, he is liable in a civil action for any tort he may commit. However justly this doctrine may have been originally subject to criticism on the grounds of reason and principle, it is now too firmly supported by the weight of authority to be disturbed. \* \* \*" *McIntyre*, at 664.

The *McIntyre* decision was cited as authority and relied on directly by the Appellate Court of Illinois, Fourth District, in *Roberts v. Hayes* (1936), 284 Ill. App. 275, 1 N.E.2d 711.

The court in *McIntyre* recognized a decision of public policy was being made, and the rationale applied by the court was influenced by certain treatises on torts, by sister State opinions and by the authority of *Weaver v. Ward* (1616), 80 Eng. Rep. 284, based on the common law. In *Weaver* the court, after first noting that a lunatic is not criminally liable, said:

> " \* \* \* yet in trespass, which tends only to give damages according to hurt or loss, it is not so; and therefore if a lunatick [*sic*] hurt a man, he shall be answerable in trespass: and therefore no man shall be excused of a trespass \* \* \* except it may be judged utterly without his fault." *Weaver*, at 284.

Defendant maintains the *McIntyre* doctrine is an anachronism left over from the early common law; and is erroneous and unjust. Defendant claims modern tort law is based on fault, and the insanity defense negates fault thereby eliminating liability.

Since a determination of the issue presented for review requires a decision of public policy, we think it appropriate to discuss the rationale behind this public policy decision.

Under the common law a trespass was the doing of an unlawful act committed with violence causing injury to the person, which action was adapted to the recovery of damages from the party committing the wrongful act. Trespass would lie for all direct personal injuries, even

though they were not intended. Black's Law Dictionary (4th ed. 1951).

■■ Even if it is deemed incongruous to hold an insane person liable in damages for an injury inflicted by an act which his infirmity rendered impossible to restrain, it is reasonable to hold the insane person liable under the principle that where two innocent persons must suffer a loss, it should be borne by the one who occasioned the loss. We think the reasoning in *Weaver* is correct, followed by our Supreme Court in the *McIntyre* decision.

The result we reach is also consistent with suggestions recently advanced that those who engage in acts of violence prohibited by our criminal laws should make financial restitution to their victims.

■■ Since an opposite view would tend to encourage pleas of insanity in civil cases, based upon incompetency simulated for the purpose of avoiding liability, sound public policy requires a person injured through the tortious act of an incompetent be compensated, though the incompetent is not subject to criminal prosecution for the wrong. See *McIntyre*, at 665.

We note the defendant does not claim to be insane or incompetent to the extent of requiring a civil court adjudication of incompetency, with a conservator or guardian appointed. Neither is any mention made of hospitalization or treatment of defendant at any time after the shooting of Vosnos. Needless to say, such circumstances would not change the result reached herein.

In Illinois, there are numerous cases dealing with the firing of guns and injuring of people. In *Atchison v. Dullam* (1885), 16 Ill. App. 42, the court said:

> "[I]f a person is injured by the discharge of a gun in the hands of another who has entire control of it, the burden is cast upon the latter to prove that the gun was not fired at him either intentionally or negligently, but the result was inevitable and without the least fault upon his part." *Atchison*, at 46.

The latest case is *Koclanes v. Hertenstein* (1971), 130 Ill. App. 2d 916, 266 N.E.2d 119, in which the court said:

> "This statement from Atchison and its application in subsequent cases has been interpreted as merely employing the doctrine of *res ipsa loquitur*. * * *" *Koclanes*, at 918.

It is apparent a civil action for tort involving the use of a gun applies the doctrine of res ipsa loquitur and the burden is cast upon the defendant who fired the gun.

■■ In light of the principles thus announced, we find the trial court committed reversible error in finding proof of lack of capacity to form a criminal intent is a complete defense to an action for wrongful death.

For the foregoing reasons, the judgment of the Circuit Court of Cook

County is hereby reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JOHNSON, P. J., and SIMON, J., concur.