(775 P.2d 670)
No. 63,137

DANIEL B. WILLIAMS, by and through, ROBERT R. WILLIAMS, and DON HARRIS, *Appellees*, v. ALAN KEARBEY, by and through WAYNE W. KEARBEY and MARY KEARBEY, *Appellant*, and U.S.D. No. 265, Goddard, Kansas, *Defendant*.

Opinion filed June 9, 1989.

*Alan L. Rupe* and *Alan R. Pfaff*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for the appellant.

*Robert W. Reynolds*, of Wichita, for the appellees.

Before LEWIS, P.J., DAVIS and GERNON, JJ.

DAVIS, J.: In this case, we are asked to update Kansas tort law by holding that a 1927 Kansas Supreme Court decision no longer states the current tort law in Kansas. That decision held that "[a]n insane person who shoots and kills another is civilly liable in damages to those injured by his tort." *Seals v. Snow*, 123 Kan. 88, Syl. ¶ 1, 254 Pac. 348 (1927). We conclude that *Seals v. Snow* is well grounded in sound public policy and expresses the unanimous view of all jurisdictions considering this question. Thus, we affirm the decision of the trial court.

Defendant Alan Kearbey, a minor, shot and wounded plaintiff Don Harris and plaintiff Daniel Williams, also a minor. Plaintiffs brought this action against Kearbey for battery. The jury found for plaintiffs. It also found, in answer to a special question, that Kearbey was insane at the time. The trial court entered judgment for plaintiffs and Kearbey appeals, arguing: (1) that an insane person should not be held civilly liable for his torts; and (2) that an insane person cannot commit a battery because he is incapable of forming the necessary intent.

Highly summarized, the material facts are as follows: On January 21, 1985, Alan Kearbey, who was then 14 years old, shot several people at Goddard Junior High School. The principal was killed and three other people were wounded. Among the wounded were plaintiff Don Harris, a teacher at the school, and plaintiff Daniel Williams, a student at the school. Both were shot in the leg.

Harris and Williams brought this action against Kearbey, his parents, and the Goddard School District (U.S.D. No. 265). The trial court held that Harris' claim against the school district was barred by the Kansas Workers' Compensation Act and, at the close of plaintiffs' case, granted the school district's motion for a directed verdict against plaintiff Williams based on governmental immunity. These rulings were not appealed. The jury was allowed, however, to apportion fault to the school district. The court denied Alan Kearbey's motion for a directed verdict on the grounds of insanity.

The jury apportioned 80% of the fault to Alan Kearbey, 0% to his parents, and 20% to the school district. It found that Harris' damages were $66,637.68, and Williams' damages were $44,402.80. The trial court reduced the damages to reflect the percentage of fault attributed to Alan Kearbey and entered judgment in favor of Harris for $53,310.14 and in favor of Williams for $35,522.24.

1. Whether an Insane Person Should be Held Civilly Liable for His Torts.

In 1927, the Kansas Supreme Court held that "[a]n insane person who shoots and kills another is civilly liable in damages to those injured by his tort." *Seals v. Snow*, 123 Kan. 88, Syl. ¶ 1, 254 Pac. 358 (1927). In 1940, the Supreme Court reaffirmed this holding in dicta, saying: "It is definitely settled in this state that the defendant, Toepffer, if in fact insane, would have been civilly liable in damages for his torts." *Toepffer v. Toepffer*, 151 Kan. 924, 929, 101 P.2d 904 (1940). The appellate courts of this state have not spoken on this subject since 1940.

The tort liability of insane persons presents a policy question. In resolving this question, American courts have unanimously chosen to impose liability on an insane person rather than leaving the loss on the innocent victim. *Seals v. Snow* is a leading case in support of this view.

In *Seals v. Snow*, Martin Snow shot and killed Arthur Seals. Seals' widow brought an action for wrongful death. Snow answered that he had acted in self-defense. The jury returned a general verdict for the plaintiff, and found in answer to special questions that Snow had not acted in self-defense, that he was insane when he shot Seals, and that he was not able "to distinguish right from wrong" at the time he shot Seals. 123 Kan. at 88-89.

On appeal, Snow argued that he should not be held liable for his torts since he was insane. The court reponded:

"It is conceded that the great weight of authority is that an insane person is civilly liable for his torts. This liability has been based on a number of grounds, one that where one of two innocent persons must suffer a loss, it should be borne by the one who occasioned it. Another, that public policy requires the enforcement of such liability in order that relatives of the insane person shall be led to restrain him and that tort-feasors shall not simulate or pretend insanity to defend their wrongful acts causing damage to others, and that if he was not liable there would be no redress for injuries, and we might have the anomaly of an insane person having abundant wealth depriving another of his rights without compensation." 123 Kan. at 90.

Kearbey argues (1) the loss should fall upon plaintiffs rather than himself since he was not capable of avoiding his conduct and, hence, was not at fault; (2) it no longer makes sense to impose liability on an insane person in order to encourage his relatives to confine him since public policy no longer favors confinement of the mentally ill unless the insane person presents a danger to other people, in which case liability should be imposed directly on the insane person's relatives for failing to confine him, rather than on the insane person himself; and (3) concern over feigned insanity is no longer warranted since psychiatrists and psychologists now have improved methods of proving or disproving insanity.

Taking up Kearbey's arguments in reverse order, it is obvious that Kearbey's confidence in modern psychiatry is not widely shared. Comments to the Restatement (Second) of Torts list several valid reasons why liability is still imposed on insane persons. These reasons include:

"the unsatisfactory character of the evidence of mental deficiency in many cases, together with the ease with which it can be feigned, the difficulty of estimating its existence, nature and extent; and some fear of introducing into the law of torts the confusion that has surrounded the defense of insanity in the criminal law." Restatement (Second) of Torts § 895J comment a (1977).

Next, Kearbey argues that liability should not be imposed on an insane person in order to encourage his relatives to confine him since public policy no longer favors confinement of the mentally ill. We agree that this is not a particularly strong reason for imposing liability. It is also clear, however, that removing this rationale would not have changed the court's decision in *Seals v. Snow*.

The main rationale of *Seals v. Snow* and the one which keys our affirmance of the trial court in this case is that, as between an insane person who injures another and an innocent person, it is more just for the insane person to bear the loss he caused than to visit the loss on the injured person. As stated in *Seals v. Snow*:

" 'Undoubtedly, there is some appearance of hardship, even of injustice, in compelling one to respond for that which, for want of the control of reason, he was unable to avoid; that it is imposing upon a person already visited with the inexpressible calamity of mental obscurity an obligation to observe the same care and precaution respecting the rights of others that the law demands of one in the full possession of his faculties. But the question of liability in these cases, as well as in others, is a question of policy; and it is to be disposed of as would be the question whether the incompetent person should be supported at the expense of the public, or of his neighbors, or at the expense of his own estate. If his mental disorder makes him dependent, and at the same time prompts him to commit injuries, there seems to be no greater reason for imposing upon the neighbors or the public one set of these consequences, rather than the other; no more propriety or justice in making others bear the losses resulting from his unreasoning fury, when it is spent upon them or their property, than there would be in calling upon them to pay the expense of his confinement in an asylum, when his own estate is ample for the purpose.' " 123 Kan. at 90-91 (quoting 1 Cooley on Torts 172 [3d ed. 1906]).

Although the above language is somewhat dated, the reasoning is still well grounded in sound public policy. Someone must bear the loss and, as between the tortfeasor, the injured party, and the general public, sound public policy favors placing the loss on the person who caused it, whether sane or not.

With one exception, it appears that every American court dealing with the question has reached this same result. A leading case is *McGuire v. Almy*, 297 Mass. 323, 8 N.E.2d 760 (1937), in which the court affirmed a verdict against an insane person for tortious assault and battery. The court stated:

"Turning to authorities elsewhere, we find that courts in this country almost invariably say in the broadest terms that an insane person is liable for his torts. As a rule no distinction is made between those torts which would ordinarily be

classed as intentional and those which would ordinarily be classed as negligent, nor do the courts discuss the effect of different kinds of insanity or of varying degrees of capacity as bearing upon the ability of the defendant to understand the particular act in question or to make a reasoned decision with respect to it, although it is sometimes said that an insane person is not liable for torts requiring malice of which he is incapable. Defamation and malicious prosecution are the torts most commonly mentioned in this connection. [See *e.g., Wilson v. Walt*, 138 Kan. 205, 25 P.2d 343 (1933).] . . . These decisions are rested more upon grounds of public policy and upon what might be called a popular view of the requirements of essential justice than upon any attempt to apply logically the underlying principles of civil liability to the special instance of the mentally deranged. . . .

"The rule established in these cases has been criticized severely by certain eminent text writers both in this country and in England, principally on the ground that it is an archaic survival of the rigid and formal medieval conception of liability for acts done, without regard to fault, as opposed to what is said to be the general modern theory that liability in tort should rest upon fault. Notwithstanding these criticisms, we think that as a practical matter there is strong force in the reasons underlying these decisions." 297 Mass. at 326-27.

For recent cases holding that an insane person is liable for his torts, see *Mullen v. Bruce*, 168 Cal. App. 2d 494, 335 P.2d 945 (1959) (insane person liable for intentional torts if he intended to cause injury); *Polmatier v. Russ*, 206 Conn. 229, 537 A.2d 468 (1988) (insane person liable for intentional torts); *Kaczer v. Marrero*, 324 So. 2d 717 (Fla. Dist. App. 1976) (insane person civilly liable for assault and battery); *Vosnos v. Perry*, 43 Ill. App. 3d 834, 357 N.E.2d 614 (1976) (public policy requires that an insane person be held civilly liable for his torts); *Barylski v. Paul*, 38 Mich. App. 614, 196 N.W.2d 868 (1972) (insane person civilly liable for his torts, except, perhaps, those requiring malice); *Banks v. Dawkins*, 339 So. 2d 566 (Miss. 1976) (insane person civilly liable for assault and battery); and *Albicocco v. Nicoletto*, 11 App. Div. 2d 690, 204 N.Y.S.2d 566 (1960), *aff'd* 9 N.Y.2d 920, 176 N.E.2d 100 (1961) (one who is temporarily insane at the time of an assault is responsible for the assault to the same extent as though he were sane).

The one apparent exception among the jurisdictions considering this question is Connecticut. In *FitzGerald v. Lawhorn*, 29 Conn. Supp. 511, 294 A.2d 338 (Conn. C.P., 1972), defendant shot the plaintiff but defended on the basis of insanity. After stating that it was "not willing to accept" the majority view because "[i]t appears to be an outdated point of view," the court held that defendant was incapable of forming any intent to injure

and entered judgment in his favor. 29 Conn. Supp. at 513-14. Kearbey relies heavily on this case. However, *FitzGerald* has recently been overruled *sub silentio*.

In *Polmatier v. Russ*, 206 Conn. 229, the defendant shot his father-in-law to death. In the subsequent action for wrongful death, defendant pleaded his insanity as a defense. The trial court held that insanity was not a defense and entered judgment for plaintiff. 206 Conn. at 230-32. The Connecticut Supreme Court affirmed. The court acknowledged that the majority rule had been subject to scholarly criticism; however, it stated that its examination of the case law, including the "leading" case of *Seals v. Snow*, had persuaded it to follow the majority rule. 206 Conn. at 234-35. It also stated that the majority rule was consistent with the settled common-law rule that " 'where one of two innocent persons must suffer loss from an act done, it is just that it should fall on the one who caused the loss rather than upon the other who had no agency in producing it and could not by any means have avoided it.' " 206 Conn. at 236. Although *FitzGerald* was never mentioned in the opinion, there is no doubt that it has effectively been overruled.

2. Whether an Insane Person is Capable of Forming the Intent of Bringing about a Harmful or Offensive Bodily Contact that is Necessary to the Tort of Battery.

Kearbey argues that he did not commit the tort of battery because his insanity prevented him from forming the intent necessary for that tort. The prevailing American view as set forth above is that a finding of insanity does not preclude a finding that a defendant acted intentionally. A jury may find that an insane person acted intentionally if he intended to do what he did, even though his reasons and motives were entirely irrational. Restatement (Second) of Torts § 895J comment c (1977); Prosser & Keeton on Torts § 135, p. 1074 (5th ed. 1984).

The requirements of the prevailing American view for imposing liability for an intentional tort are satisfied in this case. In finding for the plaintiffs, the jury necessarily found that Alan Kearbey touched or struck the plaintiffs "with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." The fact that Kearbey did not "understand the nature of his acts" or did not "understand that what he was doing was prohibited by law" does not preclude the

jury from finding that Kearbey acted intentionally in discharging a weapon in Goddard Junior High School.

Affirmed.