Thomas K. DELAHANTY, et al., Plaintiffs,

v.

John W. HINCKLEY, Jr., Defendant.

James Scott BRADY, et al., Plaintiffs,

v.

John W. HINCKLEY, Jr., Defendant.

Timothy John McCARTHY, Plaintiff,

v.

John W. HINCKLEY, Jr., Defendant.

Civ. A. Nos. 82–409, 82–549 and 82–866.

United States District Court, District of Columbia.

Aug. 14, 1992.

Robert Cadeaux, Cadeaux & Taglieri, Washington, D.C., for plaintiffs Jean Delahanty and Thomas Delahanty.

Jacob A. Stein, Stein, Mitchell & Mezines, Washington, D.C., for plaintiffs James Scott Brady and Sarah B.

Paul Douglas Kamenar, Daniel J. Popco and Nicholas E. Calio, Washington, D.C., for plaintiff Timothy John McCarthy.

Judith A. Miller, Williams & Connolly, Vincent John Fuller, Betty Jo and Theresa Jones, Washington, D.C., for defendant John W. Hinckley, Jr.

## MEMORANDUM

JOHN GARRETT PENN, Chief Judge.

This case is before the Court on defendant's Motion for Summary Judgment on the issue of liability for punitive and compensatory damages.[1] After giving careful consideration to the motion, the opposition thereto, and the record in this case, the Court concludes for reasons set out below that the motion must be denied.

*Arguments*

Defendant contends that while he was in a 'deluded and psychotic state of mind' he fired at the President of the United States of America. Plaintiffs, who were near the President were struck by bullets fired by the defendant. The criminal case was tried before a federal jury and the defendant was found not guilty by reason of insanity on all counts. *See United States v. John W. Hinckley, Jr.,* Findings and Order, Criminal Number 81–306, August 10, 1982. On the basis of this verdict and a subsequent evaluation and report on Mr. Hinckley's mental condition in accordance with D.C.Code Ann. § 24–301(d) (1981)[2], defendant was involuntarily committed to St. Elizabeth's Hospital. *Id.* Defendant asserts that these events require a finding of summary judgment in his favor since they

---

1. At a 1988 status hearing, the Court orally denied defendant's motion as is related to compensatory damages. The case then became inactive, as the parties were engaged in settlement negotiations. When it became apparent that the case would go to trial, counsel for plaintiffs James Scott Brady, *et al.* requested a written memorandum addressing the entire motion.

2. D.C.Code § 24–301(d)(1) provides: "If any person tried upon an indictment or information for an offense raises the defense of insanity and is acquitted solely on the ground that he was insane at the time of its commission, he shall be committed to a hospital for the mentally ill until such time as he is eligible for release pursuant to this subsection ..." Section 24–301(d)(2) provides in relevant part: "(A) A person confined pursuant to paragraph (1) of this subsection shall have a hearing, unless waived, within 50 days of his confinement to determine whether he is entitled to release from custody ..."

186

demonstrate that he was legally insane at the time of the shootings. In accordance with this argument defendant contends that: (1) insane actors are not held liable for punitive damages under the law of this jurisdiction and (2) that the historical rule in this jurisdiction, requiring that an insane actor be held liable for compensation to the victims of his torts, should be rejected by this Court.

Plaintiffs argue that to succeed on his motion for summary judgment, on the issue of punitive damages, defendant must prove that he was insane. They assert that defendant's sanity remains unresolved by the prior criminal proceeding and subsequent commitment. Plaintiffs additionally contend that as a matter of law, a tortfeasor is liable for compensatory damages, regardless of his mental state at the time of the tort.

*Punitive Damages*

■ Insane tortfeasors are not liable for punitive damages to the victims of their torts. *Aetna Casualty and Surety Co. v. Porter,* 181 F.Supp. 81, 88 (D.D.C.1960). Nonetheless, the question of defendant's sanity, at the time of the tort, remains a genuine issue of fact to be tried. Defendant may not rely on the verdict in his criminal trial to support the proposition that he was legally insane at the time of the shootings.

■ It is well settled that in order to preclude a party from raising, in a later proceeding, an issue that was determined in a prior proceeding—as defendant seeks to do on the issue of insanity—identity of the issues in the two proceedings must exist. *See Clark–Cowlitz Joint Operating Agency v. Federal Energy Regulatory Commission,* 264 U.S.App.D.C. 58, 826

F.2d 1074, 1079 (1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988). Further, with regard to the application of issue preclusion in the setting of a criminal trial and a subsequent civil trial, the Supreme Court has said that "the difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine...." *Helvering v. Mitchell,* 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938). The Court in *Helvering* stressed that an acquittal in a criminal trial under the reasonable doubt standard is not the same as determining that a defendant is not liable under the civil standard of preponderance of the evidence. *Id.*

■ Defendant cannot dispute that the standard in effect at the time of his federal criminal trial placed the burden of proving his sanity on the government.[3] In the previous criminal trial, the jury found that the defendant was not sane because the government did not prove his sanity beyond a reasonable doubt. However, in the instant civil action, defendant bears the burden of proving that he was insane by a preponderance of the evidence. Accordingly summary judgment is improper as to the issue of recoverability of punitive damages because there is a genuine issue as to defendant's sanity.

*Compensatory Damages*

■ An insane person is liable for compensatory damages for his torts where express malice or evil intent is not a necessary element of the tort. *Aetna Casualty,* 181 F.Supp. at 88. The primary purpose of such a rule is to *compensate* the victims for their loss.[4] Defendant urges the Court to reject this well established rule.

**3.** In criminal cases, "the sanity of the accused is always an element of the offense charged; and the presumption of sanity, standing in the place of evidence when no question is raised about the issue, takes care of the prosecution's burden of proving sanity. But when *evidence of insanity is received,* regardless of the source, that presumption disappears, and the prosecution has the *burden of proving the mental capacity of the accused beyond a reasonable doubt.*" (emphasis the Court's). *United States v. Fortune* 513 F.2d 883, 889 (5th Cir.) *cert. denied* 423 U.S.

1020, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975), *quoting, Mims v. United States,* 375 F.2d 135, 140 (5th Cir.1967).

**4.** The Court finds defendant's analogy to the tortfeasor who caused a loss while suffering from a sudden physical disability to be erroneous under the facts presented herein. *See Breunig v. American Family Insurance Co.,* 45 Wis.2d 536, 173 N.W.2d 619 (1970) (court held that liability depends on the nature of the insanity such as where the mental illness without fore-

While the Court acknowledges that commentators have criticized the common law rule, the fact remains that "courts in this country almost invariably say in the broadest terms that an insane person is liable for his torts." *Williams v. Kearbey*, 13 Kan. App.2d 564, 775 P.2d 670 (1989). *See e.g., Mullen v. Bruce*, 168 Cal.App.2d 494, 335 P.2d 945 (1959); *Polmatier v. Russ*, 206 Conn. 229, 537 A.2d 468 (1988); *Kaczer v. Marrero*, 324 So.2d 717 (Fla.App.1976); *Vosnos v. Perry*, 43 Ill.App.3d 834, 2 Ill. Dec. 447, 357 N.E.2d 614 (1976) *Banks v. Dawkins*, 339 So.2d 566 (Miss.1976) *Albicocco v. Nicoletto*, 11 A.D.2d 690, 204 N.Y.S.2d 566 (1960) *aff'd*, 9 N.Y.2d 920, 217 N.Y.S.2d 91, 176 N.E.2d 100 (1961). Moreover, there are modern justifications for such a rule. *See* Splane, *Tort Liability of the Mentally Ill in Negligence Actions*, 93 Yale L.J. 153,163 (1983) (using the objective standard to determine primary negligence helps minimize the burden on the community from deinstitutionalization, helps foster community acceptance of the mentally ill, and encourages the mentally ill to become self-sufficient responsible members of the community).

Defendant relies on *Fitzgerald v. Lawhorn*, 29 Conn.Supp. 511, 294 A.2d 338 (1972) in which the court was not willing to accept the majority view that insane persons are liable for their torts because "it appears to be an outdated point of view." [5] However, *Fitzgerald* has been overruled *sub silentio* in *Polmatier v. Russ*, 206 Conn. 229, 537 A.2d 468 (1988). In that

case the court held that "the majority rule is consistent with the settled common-law rule that where one of two innocent persons must suffer loss from an act done, it is just that it should fall on the one who caused the loss rather than upon the other who had no agency in producing it and could not by any means have avoided it." 537 A.2d 468.

### Conclusion

In view of the foregoing discussion, the Court will deny defendant's motion for summary judgment in its entirety.[6] An appropriate order follows this opinion. In addition, the Court will file a separate order setting forth the undisputed facts and the issues left for trial.

---

warning suddenly affects the individual's ability to act in a prudent manner). There is no allegation that Mr. Hinckley suffered from a sudden mental illness or that he had no prior notice of a mental disability.

**5.** The court in *Williams v. Kearbey* points out that this Connecticut case is the "one apparent exception among the jurisdictions considering this question...." *Id.* at 775 P.2d 670, 673 (Kan.1989).

**6.** At a settlement conference on March 31, 1992, counsel for the defendant stated that the Supreme Court's recent decision in *Simon & Schuster Inc. v. Member of the New York State Crime Victims Bd.*, —— U.S. ——, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) has caused defendant to reconsider the previously agreed to settlement

terms. The Supreme Court therein addressed New York's "Son of Sam" law. That statute required that when an accused or convicted criminal authored works describing his crime, any income derived must be deposited in an escrow account. Under the statute the funds from the escrow account were to be made available to the criminal's victims and creditors. The Court held that this statute was presumptively inconsistent with the First Amendment in that it imposed a content based financial disincentive on speech. *Id.* —— U.S. at ——, 112 S.Ct. at 508–509.

The Court notes that *Simon & Schuster* is inapplicable to the instant action which in no way involves any governmental restraint on the defendant's First Amendment rights and which does not preclude a private tort action against the defendant.