Filed 4/29/10                    NO. 4-09-0658

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

|  |  |  |
|---|---|---|
| | ) | Appeal from |
| ALYCIA L. DOUGHERTY, as Administratrix | ) | Circuit Court of |
| of the Estate of JANE ANN COLE, | ) | Macon County |
| Deceased, | ) | No. 08P192 |
|      Petitioner-Appellee, | ) | |
|      v. | ) | Honorable |
| JACK JASON COLE, JR., | ) | Albert G. Webber, |
|      Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the opinion of the court:

In October 2008, petitioner, Alycia L. Dougherty, in her capacity as administratrix of the estate of Jane Ann Cole, filed a three-count complaint concerning the estate of her deceased mother. Count I sought a determination of (1) whether respondent, Jack Jason Cole, Alycia's brother, caused Jane's death and if so, (2) whether Jack was barred from receipt of Jane's property pursuant to section 2-6 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/2-6 (West 2008)), commonly referred to as the "Slayer Statute." Count II alleged Jack wrongfully caused the death of the decedent under section 2 of the Wrongful Death Act (740 ILCS 180/2 (West 2008)) and sought damages therefor. Count III requested attachment of Jack's property pursuant to section 4-101 of the Code of Civil Procedure (735 ILCS 5/4-101 (West 2008)). Jack raised insanity as an affirmative defense to each count of the complaint.

In August 2009, the trial court (1) found Jack was excluded from taking property from Jane's estate pursuant to the Slayer Statute, (2) awarded Alycia $200,000 on the wrongful-death count, and (3) attached Jack's interest in two accounts for which his mother named him a beneficiary. Jack appeals each of the court's determinations. We affirm.

## I. BACKGROUND

On June 7, 2008, Jack suffered a severe manic episode and beat and stabbed his mother to death in her home, where he had been living with her. Jane died intestate, leaving Jack and Alycia as her only heirs. In July 2008, Alycia was issued letters of administration for her mother's estate.

In June 2008, Jack was charged by the Macon County State's Attorney with first degree murder in case No. 08-CF-770. An August 2008 psychiatric evaluation revealed that at the time of the killing, Jack suffered a severe manic episode with psychotic features and, as a result of those symptoms, was incapable of appreciating the criminality of killing his mother. In November 2008, Jack was found not guilty of first degree murder by reason of insanity.

In October 2008, Alycia filed a petition pursuant to the Slayer Statute. 755 ILCS 5/2-6 (West 2008). Specifically, Alycia sought to bar Jack from recovering his half of their mother's assets, which amounted to approximately $114,000 and

- 2 -

included a thrift savings plan and Federal Employee's group life insurance policy under which he was a 50% beneficiary.

In May 2009, both parties provided the trial court with memoranda of law. Alycia argued the Slayer Statute precluded Jack from any recovery because he intentionally and unjustifiably caused the death of his mother. Alycia contended the question for the court was whether Jack killed his mother intentionally despite his insanity. Jack argued applying the Slayer Statute to a criminally insane person does not further the purpose of the statute or have any legitimate public-policy objectives. In July 2009, the court determined Jack was barred from receiving any property from his mother's estate under the Probate Act, found Jack liable in the wrongful-death action, and attached any of Jane's assets for which Jack was named a beneficiary.

This appeal followed.

## II. ANALYSIS

### A. Slayer Statute

Issues of statutory construction are reviewed de novo. Weather-Tite, Inc. v. University of St. Francis, 233 Ill. 2d 385, 389, 909 N.E.2d 830, 833 (2009). In construing a statute, our main objective is to ascertain and give effect to our legislature's intent. Weather-Tite, Inc., 233 Ill. 2d at 389, 909 N.E.2d at 833. Alycia identifies a Washington case holding that the Washington's version of the slayer statute there was invoked

to bar an insane, murderous beneficiary from taking in the absence of a criminal conviction.  See In re Estate of Kissinger, 166 Wash. 2d 120, 122, 206 P.3d 665, 666 (2009) (a person who participates in the "wilful and unlawful" killing of person is prohibited from receiving any benefit resulting from his act).  Jack identifies several cases from other jurisdictions finding an insane, murderous beneficiary may inherit from his victim absent a criminal conviction.  See In re Estate of Brumage, 460 So. 2d 989, 990 (Fla. 1984), citing Fla. Stat. §732.802 (1979) ("A person convicted of the murder of a decedent shall not be entitled to inherit from the decedent or to take any part of his estate as a devisee"  (emphasis added); see also Fla. Stat. Ann. §732.802, Amendment Note, at 306 (West 2005)); Turner v. Estate of Turner, 454 N.E.2d 1247, 1249 n.4 (Ind. App. 1983) (A person who shall have been legally convicted of intentionally causing the death of another (emphasis added) shall not take from the estate of the decedent for whose death that person caused), quoting Ind. Code Ann. §29-1-2-12 (Michie 1979) (repealed by Pub. L. 147-1984, §2, eff. May 1, 1984), now Ind. Code. Ann. §29-1-2-12.1 (Michie 2000)); In re Estate of Vadlamudi, 183 N.J. Super. 342, 349, 443 A.2d 1113, 1117 (1982) (codifying New Jersey case law on the effect of a homicide of a decedent and holding "under

N.J.S.A. 3A:2A-83 [(N.J. Stat. Ann. §3A:2A-83 (West 1977) (recodified by 1981 N.J. Laws 405 (N.J. Stat. Ann. §3B:7-1 (West 1981) (repealed by 2004 N.J Laws 132)), now N.J. Stat. Ann. §3B:7-1.1 (West 2007)),] the perpetrator of a homicidal act committed while legally insane cannot be, as a matter of law, one 'who intentionally kills' within the meaning of that section"). While we find other jurisdictions' treatment of the same issue interesting, those cases are not on point as they apply differently worded statutes or, as in the case of the New Jersey statute, specifically adopted New Jersey case law on the topic. The split among courts leaves us to determine how our own legislature intended the statute to be interpreted.

When the intent of the legislature is unclear, we may use aids of construction to ascertain the meaning of a statute. O'Casek v. Children's Home & Aid Society of Illinois, 229 Ill. 2d 421, 446, 892 N.E.2d 994, 1010 (2008). To resolve the competing interpretations of the Slayer Statute presented by the parties, we consider the legislative history of the statute. See O'Casek, 229 Ill. 2d at 446, 892 N.E.2d at 1010.

We initially provide a brief history of the Slayer Statute. In 1939, the Laws of the State of Illinois provided "[a] person who is convicted of the murder of another shall not inherit from the murdered person" (Ill. Rev. Stat. 1939, ch. 3, par. 167), and a "devise or legacy to a person who is convicted

- 5 -

of the murder of the testator *** is void" (Ill. Rev. Stat. 1939, ch. 3, par. 200). These rules were adopted in sections 2-6 and 4-12 of the Probate Act (Ill. Rev. Stat. 1975, ch. 3, pars. 2-6, 4-12) (effective January 1, 1976) and then recodified in 1977 (Ill. Rev. Stat. 1977, ch. 110 1/2, pars. 2-6, 4-12). In 1983, Public Act 83-271 amended the law to read as follows:

> "A person who intentionally and unjusti-
> fiably causes the death of another shall not
> receive any property, benefit, or other in-
> terest by reason of the death, whether as
> heir, legatee, beneficiary, joint tenant,
> survivor, appointee or in any other capacity
> and whether the property, benefit, or other
> interest passes pursuant to any form of title
> registration, testamentary or nontestamentary
> instrument, intestacy, renunciation, or any
> other circumstance." Pub. Act. 83-271, §2-6,
> eff. September 9, 1983 (1983 Ill. Laws 1986,
> 1987) (amending Ill. Rev. Stat. 1983, ch. 110
> 1/2, par. 2-6 and repealing par. 4-12).

The statute applies to deaths occurring on or after September 9, 1983.

Whether an insane killer was barred from taking from his victim's estate was originally a matter of common law. In

1961, the First District held the estate of a husband found to be insane when he killed his wife was not precluded from taking the proceeds of the wife's insurance policy. Blair v. Travelers Insurance Co., 30 Ill. App. 2d 191, 197-98, 174 N.E.2d 209, 212 (1961).

In 1987, the federal District Court of the Northern District of Illinois reasoned Illinois's murderous beneficiary rule did not apply if the murderer was insane when he killed. Lincoln National Life Insurance Co. v. Johnson, 669 F. Supp. 201, 203 (N.D. Ill. 1987). The court recognized the insured in that case died in 1982, prior to the September 9, 1983, effective date of the statutory amendment, but noted the statute as it read after the amendment was not significantly different. We strongly disagree with the court's interpretation of the legislature's amendment. The statute originally excluded a person who was convicted of murder, whereas the amendment disposed of the conviction requirement and only required the intentional and unjustifiable cause of another's death. This change significantly broadened the scope of beneficiaries who fell under the statute from only those convicted of murder to anyone who intentionally and unjustifiably causes a death, without regard to whether a criminal conviction results therefrom. In addition, it significantly broadened the types of transfers covered by the statute from inheritances and legacies to any transfer of prop-

erty resulting from intentionally and unjustifiably causing the death of another.

Jack argues this court should interpret the Slayer Statute as adopting the common-law rule established in <u>Blair</u>, similar to the federal court's interpretation in <u>Lincoln National Life</u>. See <u>Winnebago County Citizens for Controlled Growth v. County of Winnebago</u>, 383 Ill. App. 3d 735, 746, 891 N.E.2d 448, 458-59 (2008) (a statute that applies to an area of law formerly governed by common-law rules should be interpreted as adopting the common law unless the legislature specified its intent to change the common law). However, our supreme court has determined the "Probate Act superseded the common law concerning descent and distribution." <u>State Farm Life Insurance Co. v. Smith</u>, 66 Ill. 2d 591, 595, 363 N.E.2d 785, 786 (1977), citing <u>Wall v. Pfanschmidt</u>, 265 Ill. 180, 189-90, 106 N.E. 785, 788 (1914). Thus, we rely on the language of the statute to determine whether Jack may rightfully recover from his mother's estate. In so doing, we must determine whether Jack "intentionally and unjustifiably" caused the death of his mother. 755 ILCS 5/2-6 (West 2008).

At the time <u>State Farm</u> was decided, there was no statute which disqualified a beneficiary who killed an insured from receiving proceeds of a life-insurance policy. <u>State Farm</u>, 66 Ill. 2d at 595, 363 N.E.2d at 786. The Probate Act at that

- 8 -

time only prohibited inheritances, devises, and legacies from taking effect when the estate beneficiary was convicted of the murder of the decedent. Ill. Rev. Stat. 1971, ch. 3, pars. 15a, 49a. Thus, the issue of whether a person who caused the death of an insured could take the proceeds of a life-insurance policy was controlled by the common law at that time. The amendment to the statute in 1983 not only eliminated the need for a murder conviction, but also codified application of the "intentional and unjustified" standard to any property, benefit, or other interest a person might receive by reason of a death he caused, whether as an heir, legatee, beneficiary, joint tenant, survivor, appointee, or in any other capacity. Thus, now the Probate Act not only governs descent and distribution, but all potential transfers of property when a person intentionally and unjustifiably causes the death of another.

Interestingly, our supreme court in State Farm framed the issue in that case as whether, absent a criminal conviction and assuming the murder was "intentional and unjustified," the beneficiary was precluded from taking under a life-insurance policy. State Farm, 66 Ill. 2d at 595, 363 N.E.2d at 786. It answered that question in the affirmative. The 1983 amendment of the Slayer Statute adopted the standard as expressed in State Farm and used the same "intentional and unjustified" language as our supreme court in that case.

To prevent a beneficiary from taking under the Slayer Statute, a party must prove the decedent was intentionally and unjustifiably killed by the beneficiary.  In re Estate of Malbrough, 329 Ill. App. 3d 77, 81, 768 N.E.2d 120, 123 (2002). As the trial court points out, the only Illinois state court case to consider whether a murderous beneficiary who escaped conviction by reason of insanity may take from the victim's estate is Button v. Elmhurst National Bank, 169 Ill. App. 3d 28, 37-38, 522 N.E.2d 1368, 1374 (1988).

In Button, the State obtained grand-jury indictments charging the victims' son with their murder.  Button, 169 Ill. App. 3d at 32, 522 N.E.2d at 1371.  He was found unfit to stand trial and was instead committed.  Button, 169 Ill. App. 3d at 33, 522 N.E.2d at 1371.  At the time of the murder in 1969, the Probate Act provided "'[a] person who is convicted of the murder of another shall not inherit from the murdered person.'"  Button, 169 Ill. App. 3d at 37, 522 N.E.2d at 1374, quoting Ill. Rev. Stat. 1969, ch. 3, par. 15a.  The Second District held the statute allowed inheritance absent a murder conviction.  Button, 169 Ill. App. 3d at 38, 522 N.E.2d at 1374.

Since Button was decided, the legislature has removed "convicted" from the Slayer Statute and a beneficiary is barred from taking for "intentionally and unjustifiably" causing a death.  As the trial court in this case noted, Jane's murder was

not justifiable, and no one has argued otherwise. Jack testified he intended to kill but only did so at the direction of a voice inside his head. A psychiatrist (in the criminal case) determined Jack was suffering from a severe manic episode with psychotic features when he killed his mother. As a result of those symptoms, he was incapable of appreciating the criminality of his conduct.

In a thoughtful, well-reasoned order, the trial court found Jack intended to kill Jane but lacked criminal intent due to mental illness. Having arrived at that conclusion, the court framed the remaining issue as whether lack of criminal intent barred application of the Slayer Statute. In finding it did not, the court reasoned the earlier version of the Slayer Statute required a conviction to bar inheritance. By removing that requirement, the legislature intended for the probate court to consider only whether the murderous act was intentional and unjustified, regardless of the institution or outcome of any criminal proceedings. As no exception for mental illness was provided in the statute, the court concluded Jack's conduct excluded him from inheriting from Jane's estate.

We agree with the trial court's findings. Jack testified he knew the person he beat and stabbed was his mother, even though he was being "told" she was the enemy. Further, he testified he knew he was grabbing the knife and trying to kill

her when he stabbed her.

The legislature's amendment to the statute supports the conclusion that a beneficiary's intentional and unjustifiable causing of death, regardless of the criminality of the act, is sufficient to bar inheritance.  The legislative history on the bill proposing the amendment likewise supports this conclusion. At the April 7, 1983, House debate on House Bill 108, Representative Cullerton asked for clarification on what the proposed bill would do.  Representative Van Duyne replied as follows:

> "It really tries to address itself to a crack in the law where there are three parts that aren't covered.  The people who are convicted are now prohibited from inheriting the estate, but those found by a criminal court to be not guilty by reason of insanity, by this [b]ill, remains mute on, those acquitted in a criminal liability, although they are in fact culpable, are charged, those who have managed to escape the criminal trial despite the culpability."  83d Ill. Gen. Assem., House Proceedings, April 7, 1983, at 60  (statements of Representative Van Duyne).

While Representative Van Duyne's wording is somewhat confusing, he appears to make the point that the law at the time prohibited

a convicted killer from inheriting, and the amendment to the law would extend the bar from taking to acquitted, insane killers who killed intentionally and unjustifiably.

At the June 20, 1983, third reading of the bill in the Senate, Senator Berman stated "House Bill 108 prohibits a person who intentionally and unjustifiably causes another[']s death from inheriting or otherwise receiving property or other interest by reason of such person[']s death.  This is a gap that has been in our civil law for a long time."  83d Ill. Gen. Assem., Senate Proceedings, June 20, 1983, at 113 (statements of Senator Berman-).

We conclude the trial court's application of the Slayer Statute in this instance was correct.  Where, as here, an individual was insane for criminal purposes but nevertheless cognizant he was killing a person, the Slayer Statute will prevent him from benefitting from his actions.

B. Wrongful-Death Suit

Jack argues this court should overturn established Illinois law allowing recovery by a victim's estate in a wrongful-death action for a death caused by an insane killer.  In McIntyre v. Sholty, 121 Ill. 660, 664, 13 N.E. 239, 240 (1887), our supreme court held an insane defendant who is not criminally liable may still be liable in a civil suit for torts he committed.  As a matter of policy, the court reasoned those injured by

a lunatic's actions would suffer more injustice if denied compensation than the estate of the insane individual would suffer by compensating his victims. McIntyre, 121 Ill. at 664, 13 N.E. at 240. Additionally, the court observed civil liability for a mentally incompetent individual's torts promotes better custody and guardianship practices for the mentally ill. McIntyre, 121 Ill. at 664-65, 13 N.E. at 240. Further, a rule to the contrary poses the risk of defendants simulating insanity to avoid liability for their torts. McIntyre, 121 Ill. at 665, 13 N.E. at 240.

This court relied on McIntyre in Robert v. Hayes, 284 Ill. App. 275, 278, 1 N.E.2d 711, 712 (1936), to decide a trial court did not err in refusing to instruct the jury on the question of insanity as a defense to causing the decedent's death. In Vosnos v. Perry, 43 Ill. App. 3d 834, 837, 357 N.E.2d 614, 616 (1976), the First District reversed the trial court's finding the defendant's lack of capacity to form criminal intent in carrying out a murder was a "complete defense" in a wrongful-death suit against the insane murderer. Jack argues this holding should be interpreted as providing insanity could be "some type of defense" because it was not a "complete defense." We do not agree with Jack's interpretation of Vosnos.

Vosnos stands for the proposition that insanity is not an affirmative defense to a wrongful-death suit, not that it may be a partial defense. Moreover, Vosnos recognized McIntyre as

- 14 -

controlling. In discussing the policy reasons behind its deci-
sion, the court noted where two innocent parties suffer losses,
the party who occasioned the loss should bear responsibility for
it. Vosnos, 43 Ill. App. 3d at 837, 357 N.E.2d at 615. Vosnos
also adopted the principle that someone who engages in violent
acts should make financial restitution to his victim. Vosnos, 43
Ill. App. 3d at 837, 357 N.E.2d at 615. Vosnos agreed with
McIntyre's observation that a policy prohibiting civil liability
for insane murderers may encourage pleas of insanity in civil
suits. Vosnos, 43 Ill. App. 3d at 837, 357 N.E.2d at 616. Those
same policy reasons still ring true today.

Defendant presents no law or policy arguments motivat-
ing us to deviate from established Illinois law in this area.
Thus, we hold the trial court did not err in granting judgment in
Alycia's favor in the wrongful-death action.

### C. $200,000 Award

Respondent argues the trial court's award of $200,000
to Alycia in wrongful-death damages is outside the limit of fair
and reasonable compensation. The trier of fact is responsible
for fixing a wrongful-death award, and we will not disturb the
amount unless it was the result of passion or prejudice.
Goldstein v. Hertz Corp., 16 Ill. App. 3d 89, 98, 305 N.E.2d 617,
625 (1973).

Jack does not provide supporting law for his assertion

that the $200,000 was not fair and reasonable. Rather, he argues this court should consider the injury he caused himself by killing his mother. While we acknowledge Jack, as well as his sister, has suffered tremendously, we must limit our consideration of this issue to Alycia's injury. Considering Alycia's close relationship with her mother and the manner in which she died, $200,000 is not outside the scope of fair and reasonable compensation. See Eaglin v. Cook County Hospital, 227 Ill. App. 3d 724, 734-35, 592 N.E.2d 205, 212 (1992) ($1.5 million verdict not excessive where mother of adult decedent was close with her daughter and shared the compensation with 13 other individuals).

D. Attachment of Respondent's Accounts

As we have determined Jack falls under the purview of the Slayer Statute and is liable in the wrongful-death action, the issue he raises relating to attachment is moot.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, P.J., and KNECHT, J., concur.

- 16 -