(No. 107108.—)

WEATHER-TITE, INC. v. UNIVERSITY OF ST. FRANCIS *et al.*—EXCEL ELECTRIC, INC., Appellee, v. UNIVERSITY OF ST. FRANCIS *et al.* (University of St. Francis, Appellant).

*Opinion filed May 21, 2009.*

George J. Vosicky, Pamela Davis Gorcowski and Richard J. Kavanagh, of Kavanagh Grumley & Gorbold LLC, of Joliet, for appellant.

Douglas W. Schlak, of New Lenox, for appellee.

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

In this appeal, we address whether an owner has a duty to retain funds due a subcontractor as shown on the general contractor's sworn statement pursuant to section 5 of the Mechanics Lien Act (770 ILCS 60/1 *et seq.* (West 2004)). The trial court entered judgment in favor of the University and against Excel, holding that the University properly paid the general contractor all funds due subcontractors as listed on the general contractor's sworn statement. The appellate court reversed and remanded for entry of an order granting Excel's motion for summary judgment. 383 Ill. App. 3d 304. We allowed the University's petition for leave to appeal. 210 Ill. 2d R. 315. We now affirm the judgment of the appellate court.

### I. BACKGROUND

This appeal involves Excel's attempt to enforce its mechanics lien. We review only those facts necessary to an understanding and resolution of that issue.

According to the parties' agreed statement of facts, the University hired Stonitsch Construction, Inc., as the general contractor for renovation of a residence hall. Stonitsch then entered into a written contract with Excel, as a subcontractor, to provide electrical labor, materials, and services for the University project.

On five occasions, Stonitsch submitted sworn statements requesting payment from the University. Each sworn statement listed Excel as the electrical subcontractor and showed the amount due Excel. After receipt of each of the first four sworn statements, the University paid Stonitsch the total amount listed on each statement, including the amount due Excel and Stonitsch then paid Excel the amounts due as listed on the statements. The University wire transferred the fifth and final payment to Stonitsch's bank account. At that time, the recipient bank exercised its right of setoff and applied the funds to an outstanding debt of Stonitsch. Thus, Excel was not paid the final balance due for electrical work, totaling $130,948.48.

Thereafter, several subcontractors, including Excel, served notices and claims for mechanics liens on the University for their work on the project. One of those subcontractors, Weather-Tite, Inc., filed an action to foreclose its mechanics lien. Excel was named as a defendant in the action. Excel filed a counterclaim to foreclose its mechanics lien.

The University filed a motion for summary judgment, arguing that Excel did not have an enforceable mechanics lien. Excel filed a cross-motion for summary judgment, arguing it had a valid and enforceable mechanics lien for $130,948.48 against the University.

The trial court entered summary judgment in favor of the University and denied Excel's cross-motion for summary judgment. The appellate court reversed the judgment and remanded to the trial court for entry of an order granting Excel's motion for summary judgment.

## II. ANALYSIS

This case is before us on the appellate court's reversal of the grant of summary judgment in favor of the University on Excel's enforcement of a mechanics lien. Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2002). The parties agree that there are no genuine issues of material fact raised in their cross-motions for summary judgment and that the case may be resolved as a matter of law. Accordingly, this appeal presents an issue appropriate for summary judgment. We review appeals from summary judgment rulings *de novo. Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

The University argues that an owner may rely on the general contractor's sworn statement and pay the general contractor all funds due subcontractors. Excel counters that the general contractor's sworn statement provides the owner notice of subcontractor claims and imposes a duty on the owner to retain funds sufficient to pay subcontractor claims.

The issue raised in this appeal requires us to construe the Mechanics Lien Act (Act) (770 ILCS 60/1 *et seq.* (West 2004)). We review *de novo* an issue of statutory construction. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996). When construing a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009), quoting *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). The plain language of the statute is the most reliable indication of legislative intent. *DeLuna*, 223 Ill. 2d at 59. "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of

interpretation." *DeLuna*, 223 Ill. 2d at 59. "The statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous." *People v. Jones*, 214 Ill. 2d 187, 193 (2005). We will not depart from a statute's plain language by reading into it exceptions, limitations, or conditions that conflict with the legislative intent. *People v. Martinez*, 184 Ill. 2d 547, 550 (1998).

We begin our review by addressing the University's argument that, pursuant to section 5 of the Act, an owner may rely on a general contractor's sworn statement and pay the general contractor all funds due subcontractors. According to the University, the express language of section 5 requires the owner to pay the general contractor all monies due once the owner receives the contractor's sworn statement listing the subcontractors. Section 5 of the Act provides, in relevant part:

> "It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, *before* the owner or his agent, architect, or superintendent shall pay or cause to be paid to the contractor or to his order any moneys or other consideration due or to become due to the contractor, or make or cause to be made to the contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing materials and labor and of the amounts due or to become due to each. Merchants and dealers in materials only shall not be required to make statements required in this Section." (Emphasis added.) 770 ILCS 60/5 (West 2004).

Contrary to the University's argument, section 5 does not require an owner to pay the general contractor upon receipt of a sworn statement listing the subcontractors. Rather, the plain language of section 5 explicitly states the owner has a duty to require the sworn statement *"before"* paying the contractor any moneys. This serves the purpose of putting the owner on notice of any subcontractor claims.

Nonetheless, the University submits that the sworn statement required by section 5 serves several purposes: (1) to apprise the owner of whether the contract price will be sufficient to pay all subcontractors; (2) to inform the owner of the dollar amount of payments the contractor will make to subcontractors from the funds the contractor has requested from the owner; and (3) to assure the owner that the balance of funds remaining due will be sufficient to cover subsequent payments to subcontractors. The University states that the sworn statement "provides an orderly, structured system for determining whether the owner's payments to the contractor are being distributed in a way that will ensure that all subcontractors' balances are zero when the last payment is made."

Not only does the University misread section 5, its interpretation of the purpose of the sworn statement is contrary to the purpose of the Act. The purpose of the Act is to permit a lien on premises when the owner has received a benefit, and the furnishing of labor and materials have increased the value or improved the condition of the property. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 164 (1998), citing *First Federal Savings & Loan Ass'n of Chicago v. Connelly*, 97 Ill. 2d 242, 246 (1983), quoting *Colp v. First Baptist Church of Murphysboro*, 341 Ill. 73, 76-77 (1930). In other words, the purpose of the Act is to protect contractors and subcontractors providing labor and materials for the benefit of an owner's property.

Excel points out that the University's reading of section 5 disregards all other sections of the Act. Specifically, Excel argues, the purpose of a contractor's sworn statement is to give the owner notice of subcontractor claims, and that notice imposes upon the owner the duties set forth in section 27 of the Act. The relevant portion of section 27 provides:

"When the owner or his agent is notified *as provided in this Act*, he shall retain from any money due or to become due the contractor, an amount sufficient to pay all demands that are or will become due such sub-contractor, tradesman, materialman, mechanic, or worker of whose claim he is notified, and shall pay over the same to the parties entitled thereto.

\* \* \*

\*\*\* *Any payment made by the owner to the contractor after such notice, without retaining sufficient money to pay such claims, shall be considered illegal and made in violation of the rights of the laborers and sub-contractors and the rights of such laborers and sub-contractors to a lien shall not be affected thereby*, but the owner shall not be held liable to any laborer and sub-contractor or other person whose name is omitted from the statement provided for in Sections 5 and 22 of this Act \*\*\*." (Emphases added.) 770 ILCS 60/27 (West 2004).

It is clear that section 27 applies to notice of a subcontractor's claim received as a result of a section 5 contractor's sworn statement. Thus, when an owner is notified of amounts due or to become due a subcontractor, as included in a contractor's sworn statement under section 5, the owner is required to retain funds sufficient to pay all claims of subcontractors.

The Act also provides for notice by the subcontractor of its claim to the owner. See 770 ILCS 60/24 (West 2004). Section 24 does not, however, require a subcontractor to serve notice of its claim on the owner "when the sworn statement of the contractor or subcontractor provided for herein shall serve to give notice of the amount due and to whom due." 770 ILCS 60/24 (West 2004). The legislature obviously intended the contractor's sworn statement to notify owners of subcontractor claims. This construction is further supported by the plain language of section 32:

"No payments to the contractor or to his order of any money or other considerations due or to become due to the

contractor shall be regarded as rightfully made, as against the sub-contractor, laborer, or party furnishing labor or materials, if made by the owner without exercising and enforcing the rights and powers conferred upon him in sections 5, 21 and 22 of this Act." 770 ILCS 60/32 (West 2004).

Reading the Act as a whole, the purpose of the contractor's sworn statement is to put the owner on notice of subcontractor claims and to create a duty upon the owner to protect the claims of the subcontractors named in the contractor's sworn statement. The purpose of the contractor's sworn statement is not, as advanced by the University, to provide an orderly method of making payments to subcontractors through the general contractor. What is clear from our reading of the Act is that the legislature intended the following orderly method of conducting construction transactions to protect subcontractor claims: (1) the owner and general contractor enter into a contract for the construction work; (2) as the work is completed, the general contractor submits a section 5 sworn affidavit that must list all subcontractors and the amount due, to become due, or advanced; (3) when the section 5 sworn affidavit lists an amount due or to become due a subcontractor, section 24 requires the owner retain sufficient funds to pay the subcontractor; and (4) section 27 requires the owner to make subcontractor payments upon receiving notice of a subcontractor claim pursuant to a section 5 sworn statement. Additionally, a lien waiver can be provided to the contractor when the subcontractor is paid, and the owner can require a lien waiver by every subcontractor when paying the contractor. Funds subject to a lien waiver are required to be held by the owner in trust for the subcontractor. See 770 ILCS 60/21.02 (West 2004).

This court has recognized that when an owner receives notice of a subcontractor claim from a contractor's sworn statement under section 5, the owner must retain sufficient funds to pay the subcontractor. In *Kiefer*

*v. Reis*, 331 Ill. 38 (1928), the contractor furnished the owners with a list of claims due subcontractors pursuant to section 5 of the Act. However, the statement was not under oath, but provided the owners notice of the amounts due subcontractors. This court held that under section 27, upon receiving notice, the owners rightly retained an amount sufficient to pay subcontractor claims from any amount due the contractor, and that the owners had a duty to pay the subcontractors. *Kiefer*, 331 Ill. at 47. See also *Keeley Brewing Co. v. Neubauer Decorating Co.*, 194 Ill. 580, 592 (1902) ("a notice by the sub-contractor is not necessary where the sworn statement of the contractor, made under section 5, gives to the owner true notice of the amount due, and to whom due").

The University submits that *Knickerbocker Ice Co. v. Halsey Bros. Co.*, 262 Ill. 241 (1914), and *Luczak Brothers, Inc. v. Generes*, 116 Ill. App. 3d 286 (1983), support its argument that the owner is entitled to rely on the contractor's sworn statement and is required to make full payment to the contractor of all amounts due subcontractors under section 5 of the Act. The University misreads these cases.

In *Knickerbocker*, the contractor issued a false sworn statement to the owner indicating the subcontractor was owed $900, when the subcontractor was actually owed $1,426.33. The owner made payment to the contractor, but retained sufficient funds from the contract price to pay the subcontractor. This court held that the subcontractor only had a lien for $911, the remaining unpaid balance on the contract between the owner and the contractor. We explained that the owner had the right to rely on the contractor's sworn statement because the owner had no knowledge of the falsity of the statement, and that "the sub-contractor must look to the contractor for any balance due on its claim over and above the amount withheld by the owner pursuant to the sworn statements made." *Knickerbocker*, 262 Ill. at 246.

In *Luczak*, the owner relied on the contractor's statement that $4,500 was paid to the subcontractor, leaving a balance due of $2,380. The trial court imposed a lien in the amount of $2,380 for the balance due because the owners relied on the contractor's sworn statement that it had already paid $4,500. The appellate court held that the owners were entitled to rely on the contractor's affidavit and that the subcontractors were only entitled to a lien in the amount shown to be due on the contractor's last sworn statement. *Luczak*, 116 Ill. App. 3d at 304.

*Knickerbocker* and *Luczak* do not support the University's position. The University does not argue that it relied on any representation that the contractor had already paid Excel. Rather, the University admits that it knew Excel had not yet been paid, but states that it was relying on the contractor to distribute its payment among the subcontractors. Applying *Knickerbocker* and *Luczak* to the facts of this case, Excel is entitled to a lien in the amount of $130,948.48, the amount due Excel on the contractor's final sworn statement.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2002). In this case there are no issues of material fact and, as a matter of law, Excel is entitled to enforce its mechanics lien under the Act. Excel is, therefore, entitled to entry of summary judgment. We therefore affirm the judgment of the appellate court reversing the trial court judgment and remanding the cause to the trial court for entry of summary judgment in favor of Excel.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*