# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Gerdau Ameristeel US, Inc. v. Broeren Russo Construction, Inc.*,
### 2013 IL App (4th) 120547

---

| | |
|---|---|
| Appellate Court Caption | GERDAU AMERISTEEL US, INC., Plaintiff, and AHAL CONTRACTING CO., INC., and BLAGER CONCRETE COMPANY, Plaintiffs-Appellees and Cross-Appellants, v. BROEREN RUSSO CONSTRUCTION, INC., and CAMPUS INVESTORS 309, LLC, Defendants-Appellants and Cross-Appellees, and JACOBSMEYER-MAULDIN CONSTRUCTION COMPANY; ROLAND REALTY, INC.; BROEREN RUSSO CONSTRUCTION, INC.; CAMPUS INVESTORS 309, LLC; RBS CITIZENS, N.A.; CHARTER ONE, a Division of RBS CITIZENS, N.A.; KLG CORPORATION; PENHALL COMPANY; AHAL CONTRACTING CO., INC.; BLAGER CONCRETE COMPANY; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants. |
| District & No. | Fourth District<br>Docket No. 4-12-0547 |
| Filed | May 23, 2013 |
| Rehearing denied | July 1, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a mechanics lien dispute arising from a construction project in which defendant subcontractor submitted a waiver of lien and subcontractor's affidavit showing that it owed more to subcontractors and suppliers than it had previously shown on waivers and affidavits and plaintiff sub-subcontractors and plaintiff supplier sought what they were still owed, the trial court's judgment for the sub-subcontractors was reversed and the cause was remanded for an order granting the sub-subcontractors their *pro rata* share of the amount owed to the subcontractor minus any *pro rata* portion paid to plaintiff supplier, and the subcontractors' appeal from the denial of their petition for attorney fees and costs was rendered moot, since the sub-subcontractors had to bear the risk from false statements made by subcontractors in the absence of timely notice to the owner or general contractor of money due. |

| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 09-CH-149; the Hon. Charles McRae Leonhard, Judge, presiding. |
| --- | --- |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Rochelle A. Funderburg (argued), of Meyer Capel, PC, of Champaign, for appellants.<br><br>Joseph P. Chamley and Mark C. Palmer (argued), both of Evans, Froehlich, Beth & Chamley, of Champaign, for appellee Blager Concrete Company.<br><br>Carl E. Metz II (argued) and Bradley M. Arnold, both of Falk Metz, LLC, of Chicago, for appellee Ahal Contracting Company. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices Knecht and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    In March 2009, plaintiff, Gerdau Ameristeel US, Inc. (Gerdau), filed a verified complaint for foreclosure of its mechanics lien and other relief against defendants, Jacobsmeyer-Mauldin Construction Company (JMC); Roland Realty, Inc.; Broeren Russo Construction, Inc. (Broeren Russo); Campus Investors 309, LLC (Campus); RBS Citizens, N.A., and Charter One, a Division of RBS Citizens, N.A.; KLG Corporation; Penhall Company; Ahal Contracting Co., Inc. (Ahal); Blager Concrete Company (Blager); and unknown owners and nonrecord claimants. Blager and Ahal later sought to enforce liens under the Mechanics Lien Act (Act) (770 ILCS 60/1 to 39 (West 2008)).

¶ 2    In December 2011, the trial court granted summary judgment in favor of Ahal and Blager. In April 2012, the court entered a judgment of foreclosure and sale. The court denied Ahal's and Blager's requests for attorney fees and deposition costs.

¶ 3    In the appeal of Campus and Broeren Russo, they argue the trial court erred in granting summary judgment in favor of Ahal and Blager. In their cross-appeals, Ahal and Blager argue the court abused its discretion in denying their petitions for attorney fees and claim costs of depositions should have been included as recoverable costs. In Campus and Broeren

Russo's appeal, we reverse and remand. Given our ruling herein, the issues raised in Ahal's and Blager's cross-appeals are rendered moot.

¶ 4                                         I. BACKGROUND

¶ 5    Initially, an introduction of the parties is necessary in this case. Campus is the owner of the subject property located at 309 East Green Street in Champaign. Broeren Russo is a general contractor. JMC is a subcontractor, and Ahal and Blager are secondary subcontractors. Gerdau is a material supplier.

¶ 6    Campus entered into a contract with or otherwise engaged the services of Broeren Russo to perform the construction of a high-rise apartment building, known as the Green Street Tower project, in Champaign. Broeren Russo then entered into a contract with or otherwise engaged the services of JMC to provide labor and materials for the project. JMC entered into a contract with or otherwise engaged the services of Ahal and Blager to provide labor and materials to the project. Blager acted at various times as a subcontractor under both JMC and Ahal. Over time, Broeren Russo paid $9,539,150 to JMC.

¶ 7    All of the materials and services provided by Blager and Ahal for the project were of excellent quality, delivered to, and accepted upon the property and were incorporated in and formed a part of the improvement and constitute a permanent and valuable improvement of the property. Ahal and Blager fully performed their obligations to the project in a timely, good and workmanlike manner. Ahal indicated it completed all work under the contract on August 22, 2008, and Blager stated it made its last delivery of concrete materials on September 2, 2008.

¶ 8    Broeren Russo submitted pay requests that were reviewed and then paid through Chicago Title & Trust Company (Chicago Title). In October 2008, JMC submitted its waiver of lien to date/subcontractor's affidavit to Broeren Russo, indicating JMC owed more to its subcontractors and suppliers than it had shown on previous requests for payment and waiver of lien to date/subcontractor's affidavits. Although $495,850 remained to be paid on the contract, JMC owed a total of $722,995.35. Broeren Russo froze all payments pending a resolution.

¶ 9    On November 18, 2008, Ahal timely mailed its notice of claim of subcontractor by United States mail certified return receipt requested, and delivery limited to addressee only, to all necessary parties. Ahal stated it had been employed by JMC to "pour and finish floor slabs," as well as perform other work, and was due $385,096.44. Campus and Broeren Russo stipulated they received Ahal's notice. On December 15, 2008, Ahal timely filed and recorded its subcontractor's claim for lien in the office of the recorder of deeds in Champaign County. Campus and Broeren Russo stipulated Ahal's lien was timely and properly recorded.

¶ 10    On November 26, 2008, Blager timely mailed its notice and claim for subcontractor/material provider's liens by United States mail certified return receipt requested, and delivery limited to addressee only, to all necessary parties. Blager stated $78,431.44 remained unpaid. Campus and Broeren Russo stipulated they received Blager's notice. On December 19, 2008, Blager timely filed and recorded its notice and claim for subcontractor liens in the recorder's office. Campus and Broeren Russo stipulated Blager's

liens were timely and properly recorded.

¶ 11 In March 2009, Gerdau filed a verified complaint for foreclosure of a mechanics lien and other relief against various defendants with an interest in the property. Gerdau alleged it entered into a contract with JMC in July 2008 to furnish and supply rebar and related materials for the project. In August 2008, Gerdau completed the work and $658,590.54 was due and owing. Gerdau made a demand for payment but the amount remained unpaid. Gerdau claimed a mechanics lien on the premises and on any amounts due from Campus, Broeren Russo, and JMC.

¶ 12 In August 2009, Blager filed a verified answer and counterclaim to enforce its mechanics liens and for other relief against all parties with an interest in the property, asserting its valid and enforceable mechanics liens. In December 2009, Ahal joined Gerdau in a first-amended complaint to enforce their mechanics liens and other relief against all parties with an interest in the property. Gerdau and JMC ultimately settled with Campus and Broeren Russo and are no longer parties at issue.

¶ 13 The sum of $384,398.14 is the outstanding balance due Ahal for all labor, equipment, materials, and supplies furnished by Ahal, including all extra work, after all payments, credits, and other allowances are taken into account, less an amount of $78,139.46 owed to Blager on its subcontract with Ahal for material Ahal purchased from Blager.

¶ 14 The sum of $78,431.44 is the outstanding balance due Blager under Blager's subcontract with JMC for all labor, equipment, materials, and supplies furnished by Blager after all payments, credits, and other allowances are taken into account. The sum of $79,188.99 is the outstanding balance due Blager under Blager's subcontract with Ahal for all labor, equipment, materials, and supplies furnished by Blager after all payments, credits, and other allowances are taken into account.

¶ 15 In January 2010, Blager filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)). In September 2010, Ahal filed a section 2-1005 motion for summary judgment. In June 2011, the trial court denied the motions for summary judgment.

¶ 16 In October 2011, Campus and Broeren Russo filed a section 2-1005 motion for summary judgment. Campus and Broeren Russo indicated they had settled with JMC and entered into a mutual release. The sole consideration was the dismissal of the claims against each other and the release of JMC's recorded lien. Campus and Broeren Russo argued Ahal and Blager were limited to their *pro rata* share of any settlement by the owner with JMC. Because JMC settled with Campus and Broeren Russo for the payment of no additional dollars, no additional money existed to which Ahal's or Blager's liens could attach. The motion stated the sole remedy was for Ahal and Blager to pursue contract claims against JMC. The trial court allowed Ahal and Blager to renew their prior motions for summary judgment.

¶ 17 In December 2011, the trial court issued its memorandum opinion and order. In part, the court stated "the parties are in agreement that Ahal and Blager properly filed and perfected liens against the property for labor or materials furnished in their respective capacities. That fact triggered application of section 27 of the Act [(770 ILCS 60/27 (West 2010))], requiring Campus to ensure that the subcontractors and material suppliers be paid." The court found

-4-

Campus and Broeren Russo's motion for summary judgment without merit. The court granted motions for summary judgment filed by Ahal and Blager. The court reserved the questions of statutory interest and attorney fees.

¶ 18 In April 2012, the trial court entered a judgment of foreclosure and sale. The court entered judgment in favor of Ahal and against Campus and Broeren Russo in the amount of $412,328.26. The court entered judgment in favor of Blager and against Campus and Broeren Russo in the amount of $215,144.24. The court also found Ahal and Blager had liens on the property for the amounts due.

¶ 19 Ahal and Blager had requested attorney fees and costs be taxed against Campus and Broeren Russo pursuant to section 17 of the Act (770 ILCS 60/17 (West 2010)). In February 2012, the trial court denied the petitions for attorney fees. In April 2012, the court denied the requests for deposition costs. This appeal and cross-appeals followed.

¶ 20 Prior to beginning our analysis, we note the record in this case consists of over 3,600 pages and 19 volumes. The parties have also filed lengthy briefs setting forth their arguments. In those briefs, the parties have stated facts with reference to the pages of the record. We would encourage the parties, especially in cases involving such a voluminous record, to also include the corresponding volume numbers where those pages can be found, thereby allowing this court quick access to the cited materials.

¶ 21 II. ANALYSIS

¶ 22 A. Appeal of Campus and Broeren Russo

¶ 23 Campus and Broeren Russo argue the trial court erred in granting summary judgment in favor of Ahal and Blager without limiting Ahal's and Blager's recovery to only their *pro rata* shares of the amount of unpaid contract funds remaining at the time they served their notices of lien. We agree.

¶ 24 1. *Summary Judgment and the Standard of Review*

¶ 25 "Summary judgment is appropriate where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201, 902 N.E.2d 645, 648 (2008) (quoting 735 ILCS 5/2-1005(c) (West 2000)). Where, as here, cross-motions for summary judgment were filed, the parties "agree only a question of law is involved, and the court should decide the issue based on the record." *Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 30, 967 N.E.2d 836. On appeal from a trial court's decision granting a motion for summary judgment, our review is *de novo*. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007).

¶ 26 2. *The Act*

¶ 27 "The Act attempts to balance the rights and duties of owners, subcontractors, and materialmen." *Bricks, Inc. v. C&F Developers, Inc.*, 361 Ill. App. 3d 157, 163, 836 N.E.2d

743, 748 (2005). Our supreme court has stated "[t]he purpose of the Act is to permit a lien on premises when the owner has received a benefit, and the furnishing of labor and materials have increased the value or improved the condition of the property. [Citations.] In other words, the purpose of the Act is to protect contractors and subcontractors providing labor and materials for the benefit of an owner's property." *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 391, 909 N.E.2d 830, 834 (2009).

"On some projects the parties are careful to fully exercise their rights under the Act; on other projects they are not. The Act seeks a fair result in each case. Losses are not always placed on owners, nor are they always placed on subcontractors. There are steps which an owner may take under the Act to protect itself, but an owner is not required to avail itself of every protection the Act affords. The same is true for subcontractors. The Act provides a minimal level of protection in those cases where neither the owner nor the subcontractor takes advantage of the discretionary protections available." *Contractors' Ready-Mix, Inc. v. Earl Given Construction Co.*, 242 Ill. App. 3d 448, 459, 611 N.E.2d 529, 536 (1993) (Cook, J., specially concurring).

"Rights under the Act are in derogation of the common law, and the steps necessary to invoke those rights must be strictly construed." *National City Mortgage v. Hillside Lumber, Inc.*, 2012 IL App (2d) 101292, ¶ 6, 966 N.E.2d 1076.

¶ 28                           3. *Section 5 of the Act*

¶ 29       Section 5(a) of the Act (770 ILCS 60/5(a) (West 2008)) provides, in part, as follows:

"It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent *** shall pay or cause to be paid to the contractor *** any moneys ***, a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing labor, services, material, fixtures, apparatus or machinery, forms or form work and of the amounts due or to become due to each."

The purpose of requiring sworn statements from contractors under section 5 "is to protect owners from the potential claims of unknown subcontractors." *Bricks*, 361 Ill. App. 3d at 164, 836 N.E.2d at 749. "To protect itself from paying twice for the same work, the owner must demand from the contractor, prior to payment, a sworn statement listing all subcontractors providing labor and materials to the contractor." *Lazar Brothers Trucking, Inc. v. A&B Excavating, Inc.*, 365 Ill. App. 3d 559, 563, 850 N.E.2d 215, 219 (2006); see also *Northwest Millwork Co. v. Komperda*, 338 Ill. App. 3d 997, 1001, 788 N.E.2d 399, 402 (2003) ("If the owner pays the contractor before receiving the sworn statement, the owner may be compelled to pay subcontractors even if he or she has paid the contractor in full.").

¶ 30                           4. *Section 24(a) of the Act*

¶ 31       Section 24(a) of the Act (770 ILCS 60/24 (West 2008)), dealing with written notice by subcontractors, states, in part, as follows:

"Sub-contractors *** may at any time after making his or her contract with the

-6-

contractor, and shall within 90 days after the completion thereof, or, if extra or additional work or material is delivered thereafter, within 90 days after the date of completion of such extra or additional work ***, cause a written notice of his or her claim and the amount due or to become due thereunder, to be sent by registered or certified mail, with return receipt requested, and delivery limited to addressee only, to or personally served on the owner of record or his agent ***; and such notice shall not be necessary when the sworn statement of the contractor or subcontractor provided for herein shall serve to give the owner notice of the amount due and to whom due ***."

A subcontractor can file a lien "once it agrees to work on the project." *Lazar Brothers*, 365 Ill. App. 3d at 563, 850 N.E.2d at 219.

¶ 32                                     5. *Section 27 of the Act*

¶ 33        Section 27 of the Act (770 ILCS 60/27 (West 2008)), dealing with the owner's duty after notice, provides, in part, as follows:

"When the owner or his agent is notified as provided in this Act, he shall retain from any money due or to become due the contractor, an amount sufficient to pay all demands that are or will become due such sub-contractor ***, and shall pay over the same to the parties entitled thereto.

* * *

*** Any payment made by the owner to the contractor after such notice, without retaining sufficient money to pay such claims, shall be considered illegal and made in violation of the rights of the laborers and sub-contractors and the rights of such laborers and sub-contractors to a lien shall not be affected thereby, but the owner shall not be held liable to any laborer and sub-contractor or other person whose name is omitted from the statement provided for in Sections 5 and 22 of this Act, nor for any larger amount than the sum therein named as due such person (provided such omission is not made with the knowledge or collusion of the owner), unless previous thereto or to his payment to his contractor, he shall be notified, as herein provided, by such person of their claim and the true amount thereof."

"The owner is protected against subcontractors not listed or amounts understated on the sworn written statement unless those omissions are with the knowledge or collusion of the owner." *Alliance Steel, Inc. v. Piercy*, 277 Ill. App. 3d 632, 635, 660 N.E.2d 1341, 1343 (1996). If the owner makes a payment after receiving notice, "the subcontractor is entitled to a lien in the amount of the wrongful payment." *Weather-Tite, Inc. v. University of St. Francis*, 383 Ill. App. 3d 304, 308, 892 N.E.2d 49, 53 (2008).

¶ 34                                     6. *Section 28 of the Act*

¶ 35        Section 28 of the Act (770 ILCS 60/28 (West 2008)), dealing with suits by subcontractors, provides, in part, as follows:

"If any money due to the *** sub-contractors be not paid within 10 days after his notice

is served as provided in sections 5, 24, and 25, then such person may file a claim for lien or file a complaint and enforce such lien ***, or he may sue the owner and contractor jointly for the amount due in the circuit court ***. In such actions, as in suits to enforce the lien, the owner shall be liable to the plaintiff for no more than the pro rata share that such person would be entitled to with other sub-contractors out of the funds due to the contractor from the owner ***."

¶ 36                              7. *Section 32 of the Act*

¶ 37       Section 32 of the Act (770 ILCS 60/32 (West 2008)) provides, in part, as follows:

"No payments to the contractor *** of any money *** due or to become due to the contractor shall be regarded as rightfully made, as against the sub-contractor, *** if made by the owner without exercising and enforcing the rights and powers conferred upon him in Sections 5, 21 and 22 of this Act."

"Where the owner pays the general contractor without obtaining an affidavit from him listing the subcontractors and amounts due or to be due them [citation], those payments are at the owner's risk." *Swansea Concrete Products, Inc. v. Distler*, 126 Ill. App. 3d 927, 934, 467 N.E.2d 388, 393 (1984) (citing sections 5 and 32 of the Act).

¶ 38                     8. *The Interplay Between the Sections of the Act*

¶ 39       In looking at the various sections of the Act, the supreme court noted the interplay of various sections pertaining to contractor notice and subcontractor payment as follows:

"[T]he legislature intended the following orderly method of conducting construction transactions to protect subcontractor claims: (1) the owner and the general contractor enter into a contract for the construction work; (2) as the work is completed, the general contractor submits a section 5 sworn affidavit that must list all subcontractors and the amount due, to become due, or advanced; (3) when the section 5 sworn affidavit lists an amount due or to become due a subcontractor, section 24 requires the owner retain sufficient funds to pay the subcontractor; and (4) section 27 requires the owner to make subcontractor payments upon receiving notice of a subcontractor claim pursuant to a section 5 sworn statement. Additionally, a lien waiver can be provided to the contractor when the subcontractor is paid, and the owner can require a lien waiver by every subcontractor when paying the contractor. Funds subject to a lien waiver are required to be held by the owner in trust for the subcontractor. See 770 ILCS 60/21.02 (West 2004)." *Weather-Tite*, 233 Ill. 2d at 393, 909 N.E.2d at 835.

¶ 40                              9. *The Parties' Arguments*

¶ 41       Campus (the owner) and Broeren Russo (the general contractor) contend they were unaware, prior to receiving subcontractor JMC's last pay request, that JMC owed more to its subcontractors and suppliers than JMC had previously shown. Campus and Broeren Russo claim they had already paid out contract funds in reliance of JMC's previous waiver of lien to date/subcontractor affidavits. Campus and Broeren Russo argue the recovery of the

secondary subcontractors (Ahal and Blager) is limited to only their *pro rata* share of the amount of unpaid contract funds ($495,850) owed to their immediate contractor (JMC) remaining at the time they served their notices of lien.

¶ 42    Ahal and Blager argue their opponents' *pro rata* position is without merit because Campus never requested or relied upon any section 5 affidavits from Broeren Russo, or any other subcontractor, prior to making payments on the project. Ahal and Blager contend only pay applications were sent to Campus, not section 5 affidavits and sworn statements. Further, Ahal and Blager assert sworn statements were issued by Broeren Russo to Chicago Title, which Ahal and Blager claim was not Campus' agent. Because Campus and Broeren Russo did not comply with the Act, Ahal and Blager contend Campus and Broeren Russo cannot complain that they could be compelled to pay more than the original contract price.

¶ 43    In their reply brief, Campus and Broeren Russo argue they complied with section 5 of the Act. They assert Chicago Title was their agent, and Chicago Title's receipt, review, and reliance on sworn statements was sufficient to satisfy section 5. In support of their argument, Campus and Broeren Russo rely on the First District's decision in *Bricks*.

¶ 44                                    10. *Bricks*

¶ 45    In *Bricks*, 361 Ill. App. 3d at 159, 836 N.E.2d at 745, Cole Taylor Bank (Bank), as trustee, was the owner of the premises on which construction work was done; C&F Developers, Inc. (C&F), was the general contractor; G&B Construction, Inc. (G&B), was the masonry subcontractor; and Bricks, Inc. (Bricks), was G&B's secondary subcontractor.

¶ 46    Subcontractor G&B purchased bricks from Bricks between October and December 2001, and Bricks completed delivery of the bricks, valued at $64,510.22, by December 11, 2001, but G&B failed to pay. *Bricks*, 361 Ill. App. 3d at 159, 836 N.E.2d at 745. General contractor C&F deposited sworn statements with Bank on November 1, 2001, and December 6, 2001, stating the total contract price and identifying various subcontractors, including G&B. However, the statements did not identify Bricks as a supplier to G&B. G&B's waiver of liens also failed to identify its contract with Bricks or that G&B was indebted to Bricks. As of December 13, 2001, $260,000 of the $270,000 due on the masonry subcontract to G&B had been paid, leaving $10,000 remaining due on the contract. *Bricks*, 361 Ill. App. 3d at 159, 836 N.E.2d at 746.

¶ 47    Bricks served its notice and claim for mechanics lien on Bank, C&F, and G&B on February 26, 2002, and recorded its mechanics lien on March 12, 2002. *Bricks*, 361 Ill. App. 3d at 160, 836 N.E.2d at 746. Thereafter, Bank and C&F moved for partial summary judgment, arguing their liability to Bricks was limited to $10,000, the unpaid balance owed to G&B as of the date of their notice of Bricks' lien. *Bricks*, 361 Ill. App. 3d at 160, 836 N.E.2d at 746. The trial court granted the motion, finding Bricks' lien was limited to the $10,000 that remained due to G&B as shown on the sworn statements of C&F. *Bricks*, 361 Ill. App. 3d at 160, 836 N.E.2d at 746.

¶ 48    On appeal, Bricks argued the trial court erred in granting the motion and limiting its recovery to $10,000 on its mechanics lien. *Bricks*, 361 Ill. App. 3d at 162-63, 836 N.E.2d at 748. Bricks claimed it satisfied the requirements of section 24 of the Act by causing its notice

and claim for lien to be served on Bank and C&F within 90 days after completion of its work under its contract with G&B.

¶ 49    The First District agreed that Bricks had satisfied the notice requirements of section 24 but noted "the Act also seeks to protect owners from the potential claims of subcontractors." *Bricks*, 361 Ill. App. 3d at 163, 836 N.E.2d at 749. The court cited several cases that found "a secondary subcontractor seeking to enforce his mechanics' lien, even if in compliance with the notice requirements of section 24 of the Act, *is limited to recovering only that amount which is owed to his immediate contractor at the time the notice of his lien is given*." (Emphasis added.) *Bricks*, 361 Ill. App. 3d at 163, 836 N.E.2d at 749.

¶ 50    The First District then turned to section 5 of the Act. *Bricks*, 361 Ill. App. 3d at 164, 836 N.E.2d at 749. The court stated the purpose of requiring section 5 "sworn statements from contractors is to protect owners from the potential claims of unknown subcontractors." *Bricks*, 361 Ill. App. 3d at 164, 836 N.E.2d at 749. The court also stated "an owner is entitled to rely upon a contractor's affidavit in making payments and is protected as against unidentified subcontractors so long as he has no knowledge or notice that the affidavit contains false or incomplete information." *Bricks*, 361 Ill. App. 3d at 164, 836 N.E.2d at 749.

¶ 51    In looking at the facts of that case, the court found Bricks properly served notice of its secondary subcontractor's lien on Bank, C&F, and G&B on February 26, 2002, within the 90-day window as required by section 24 of the Act. *Bricks*, 361 Ill. App. 3d at 164, 836 N.E.2d at 749. However, Bank received notice of Bricks' lien only after paying all but $10,000 to G&B, and Bricks presented no evidence that Bank or C&F knew of the existence of Bricks as a subcontractor prior to payment, that the omission of Bricks from G&B's sworn statements was with the knowledge or collusion of Bank, or that any payments were wrongfully made by Bank after receiving notice from Bricks of its lien. *Bricks*, 361 Ill. App. 3d at 164, 836 N.E.2d at 749-50.

¶ 52    Because Bank, as owner, could rely on sworn statements from its contractor, the First District found Bricks' recovery was limited to the unpaid amount due to Bricks' immediate contractor as of the date Bricks served notice of its lien. *Bricks*, 361 Ill. App. 3d at 165, 836 N.E.2d at 750. The court "empathize[d] with Bricks' plight," recognizing Bricks filed its notice in compliance with section 24 but recovered less than the amount of materials it provided. *Bricks*, 361 Ill. App. 3d at 165, 836 N.E.2d at 750. However, the court concluded that "[t]hough this result seems contrary to one of the Act's goals of protecting materialmen and suppliers who in good faith furnish materials for the construction of a building [citation], the Act, in fact, seeks to balance the rights and duties of subcontractors, materialmen, and owners alike." *Bricks*, 361 Ill. App. 3d at 165, 836 N.E.2d at 750.

¶ 53                              11. *Sworn Statements and Payments*

¶ 54    In the case *sub judice*, Campus was the owner; Broeren Russo was the general contractor; JMC was a subcontractor; and Ahal and Blager were secondary subcontractors. In August 2008, JMC sent Broeren Russo a request for payment indicating the remaining contract to bill amounted to $495,850, and the current amount due was $456,621.40. JMC certified the work performed and the materials supplied represented the actual value of the

-10-

accomplishment under the contract and that "the contractor had paid all amounts previously billed and paid by the owner." JMC did not mention Ahal or Blager in the request.

¶ 55　　In December 2007, February 2008, April 2008, and May 2009, Broeren Russo provided a "sworn statement for contractor and subcontractor to owner and Chicago Title & Trust Company." The statement listed those who "have been contracted with, and have furnished or are furnishing materials and/or labor" on the project. The statements noted, *inter alia*, the name of the contractor-supplier and its trade, and the amounts as to the base contract, the total contract, previous payments, and the balance to complete. Each statement listed JMC as a contractor-supplier for superstructure concrete. The May 2009 statement listed the balance due to JMC was $495,850. Schuyler Sanborn, Broeren Russo's corporate representative, testified Broeren Russo submitted section 5 affidavits to Chicago Title with every pay application.

¶ 56　　On October 28, 2008, JMC sent Broeren Russo its waiver of lien to date and subcontractor's affidavit. In the affidavit, JMC listed Ahal, Blager, and three other entities and listed the balance due as $722,995.35. Broeren Russo immediately froze any further payments pending a resolution. Ahal filed its notice and claim for mechanics lien on November 18, 2008, and recorded the lien on December 15, 2008. Blager filed its notice and claim for mechanics lien on November 26, 2008, and recorded the lien on December 19, 2008.

¶ 57　　We find the sworn statements from Broeren Russo to Chicago Title satisfied the requirements of section 5 of the Act. Broeren Russo's sworn statement listed JMC as a subcontractor and the amounts due. Thus, the general contractor provided the necessary information to the owner.

¶ 58　　Ahal and Blager argue no valid section 5 affidavits were provided to Campus prior to its making payments to Broeren Russo. However, section 5 does not specify any particular form for the contractor's sworn statement. It also does not require the form be labeled in a specific manner. Moreover, that certain principals may have been unfamiliar with the phrase "section 5 affidavit" does not correlate to an inability to file a proper sworn statement under section 5 of the Act.

¶ 59　　Ahal and Blager claim the sworn statements issued by Broeren Russo did not go to Campus but went to Chicago Title, which Ahal and Blager claim was not Campus's agent. Ahal's and Blager's sole source for this claim is the deposition testimony of Campus's corporate designee, Brian Neiswender, who stated he "never considered it" when asked whether he considered Chicago Title to be Campus's agent. Such testimony can hardly be definitive proof of a lack of agency. Moreover, Neiswender stated there "may have been either a contract or something of that nature" between Chicago Title and Campus, and "there was cost associated" with Chicago Title's work. It is hard to fathom what role Chicago Title played if not Campus's agent since, as Ahal and Blager concede, it "participated in processing payments relating to the construction of the Project." We find no merit in Ahal's and Blager's claims. See *Deerfield Electric Co. v. Herbert W. Jaeger & Associates, Inc.*, 74 Ill. App. 3d 380, 384, 392 N.E.2d 914, 917 (1979) (stating the Act "does not preclude an agent of an owner from requesting the [section 5] statement on its behalf").

-11-

¶ 60 Ahal and Blager also claim Broeren Russo was well aware of their involvement in the project from the "earliest stages," and Broeren Russo's failure to mention the secondary subcontractors imputes to the detriment of Campus. However, the mere presence of a workman on a job does not "constitute notice to the owner on which a mechanic's lien may be based." *Sanaghan v. Lawndale National Bank*, 90 Ill. App. 2d 254, 260, 232 N.E.2d 546, 549 (1967); see also *Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648, 655, 655 N.E.2d 1065, 1070 (1995). Moreover, an owner is required to retain sufficient funds to pay the subcontractor when he "receives notice of a *subcontractor claim* from a contractor's sworn statement under section 5." (Emphasis added.) *Weather-Tite*, 233 Ill. 2d at 393, 909 N.E.2d at 835. Here, no such notice of Ahal's and Blager's claims was given in the section 5 affidavits from Broeren Russo to Chicago Title prior to JMC's notice of lien to date/subcontractor affidavit.

¶ 61 An owner has the right to rely on a contractor's statements pertaining to subcontractors and the work those subcontractors perform. *Sanaghan*, 90 Ill. App. 2d at 262, 232 N.E.2d at 550. Here, Campus, through its agent Chicago Title, could rely on Broeren Russo's sworn statements, and the representations as to subcontract work set forth therein, in making payments. See *Bricks*, 361 Ill. App. 3d at 164, 836 N.E.2d at 749.

¶ 62 We are mindful Ahal and Blager properly served notice of their secondary subcontractors' liens on Campus and Broeren Russo on November 18 and 26, 2008, respectively, which was within the 90-day window as required by section 24 of the Act. However, Campus received notice of the liens only after paying all but $495,850, which pertained to the amount to be paid to JMC as evidenced by its request for payment. No evidence has been presented to show that Campus or Broeren Russo knew of the existence of a claim by Ahal and Blager as subcontractors prior to payment, that the omission of Ahal and Blager from Broeren Russo's sworn statement was with the knowledge or collusion of Campus, or that any payments were wrongfully made by Campus after receiving notice from Ahal and Blager of their liens. Instead, the evidence indicated Campus and Broeren Russo immediately froze the amounts claimed due and owing to JMC, namely, the $495,850.

¶ 63 As in *Bricks*, because Campus could rely on Broeren Russo's sworn statements, Ahal's and Blager's recovery is limited to the unpaid amount due to their immediate contractor as of the date they served notice of their liens. See *Decatur Housing Authority v. Christy-Foltz, Inc.*, 117 Ill. App. 3d 1077, 1081, 454 N.E.2d 379, 382 (1983) (stating subcontractors are limited "to the amounts due their immediate contractors at the time the notice of their liens is given"); *Luczak Brothers, Inc. v. Generes*, 116 Ill. App. 3d 286, 303, 451 N.E.2d 1267, 1281 (1983). As such, Ahal and Blager are entitled to recovery of their *pro rata* shares of the funds remaining due to JMC on the subcontract between Broeren Russo and JMC, less any *pro rata* portion paid to Gerdau.

¶ 64                 12. *Campus and Broeren Russo's Settlement With JMC*

¶ 65 In their motion for summary judgment, Campus and Broeren Russo argued they were entitled to summary judgment based on the decision in *Premier Electrical Construction Co. v. American National Bank of Chicago*, 276 Ill. App. 3d 816, 658 N.E.2d 877 (1995). They

focused the bulk of their argument on their belief that the settlement they reached with JMC absolved them of liability on the lien claims of Ahal and Blager. Since JMC settled for no additional payment of funds, Campus and Broeren Russo posit that Ahal and Blager are limited to a recovery of only their *pro rata* share of zero dollars. We note Campus and Broeren Russo rely on *Premier Electrical* and their settlement with JMC as an alternative argument now on appeal.

¶ 66    In that case, the owner, 666 Associates, entered into a general contract with Morse/Diesel (MDI) to remodel and reconstruct a building in Chicago. *Premier Electrical*, 276 Ill. App. 3d at 819, 658 N.E.2d at 881. MDI entered into a subcontract with Premier Electrical Construction Company (Premier) for electrical work. *Premier Electrical*, 276 Ill. App. 3d at 819, 658 N.E.2d at 881. Eventually, MDI failed to pay Premier for its work, and Premier filed a mechanics lien against 666 Associates and the land trustee. MDI filed mechanics liens against the owner and land trustee, and the $2.4 million amount included the amount owed to Premier. *Premier Electrical*, 276 Ill. App. 3d at 819, 658 N.E.2d at 881-82.

¶ 67    Premier filed a complaint against MDI and others, asserting, *inter alia*, a claim to foreclose its mechanics lien under section 28 of the Act. *Premier Electrical*, 276 Ill. App. 3d at 819, 658 N.E.2d at 882. The project ended up in bankruptcy, and Chemical Bank purchased the project at a mortgage foreclosure sale. *Premier Electrical*, 276 Ill. App. 3d at 819, 658 N.E.2d at 882. In March 1988, the trial court dismissed Premier's mechanics lien claim against Chemical Bank for failure to comply with the requirements of section 7 of the Act. *Premier Electrical*, 276 Ill. App. 3d at 820, 658 N.E.2d at 882.

¶ 68    In March 1989, Chemical Bank entered into a settlement agreement with MDI and the title insurer, whereby MDI agreed to release all of its mechanics liens, including Premier's, in return for payment of $750,000. *Premier Electrical*, 276 Ill. App. 3d at 820, 658 N.E.2d at 882. The court held Chemical Bank, while not an owner under the Act, "stepped into the shoes of the owners by purchasing title to the property at a foreclosure sale," and "MDI had the authority to release Premier's claims without its consent since the subcontractor's right to a mechanic's lien is dependent on the contract between the owner and contractor." *Premier Electrical*, 276 Ill. App. 3d at 821, 658 N.E.2d at 883. In December 1991, the trial court entered summary judgment in favor of Premier and against MDI and 666 Associates on the mechanics lien for the amount of $362,721.56. Upon reconsideration, the court lowered the amount to $169,895, which was Premier's *pro rata* share of the $750,000 settlement amount plus interest. *Premier Electrical*, 276 Ill. App. 3d at 820, 658 N.E.2d at 881.

¶ 69    On appeal, the issue centered on whether Chemical Bank could be held liable for Premier's mechanics lien on the basis that it stepped into the shoes as owner. *Premier Electrical*, 276 Ill. App. 3d at 821, 658 N.E.2d at 883. The appellate court found Chemical Bank was, at first, a lender, then a purchaser, and thus a third party to the mechanics lien claims of Premier and MDI. *Premier Electrical*, 276 Ill. App. 3d at 822, 658 N.E.2d at 883. The court stated that "[w]here the interests of third parties will be affected, a stricter construction of the Mechanics Liens Act will be adhered to than what is followed in cases arising between the mechanic and the original owner." *Premier Electrical*, 276 Ill. App. 3d at 822, 658 N.E.2d at 883. The court found Chemical Bank could not be found liable for

-13-

Premier's claim under section 28 of the Act because that section "provides for claims and suits against owners and contractors" and "[t]here is no provision for claims or suits against lenders or purchasers at foreclosure sales in that section." *Premier Electrical*, 276 Ill. App. 3d at 822, 658 N.E.2d at 883. Moreover, the court held Premier could not have "a valid lien claim against Chemical Bank merely because it purchased the property at a foreclosure sale." *Premier Electrical*, 276 Ill. App. 3d at 822, 658 N.E.2d at 882.

¶ 70 The First District did, however, find the $750,000 settlement money received from Chemical Bank in exchange for the release of all mechanics liens constituted "money owing to all those with pending claims, including Premier." *Premier Electrical*, 276 Ill. App. 3d at 822, 658 N.E.2d at 884. The court stated the owner's interest in the property was subject to a mechanics lien that had been filed by MDI, and "[i]f the owner had paid $750,000 to MDI in settlement of the lien, Premier Electrical would have been entitled to a share of the settlement proceeds." *Premier Electrical*, 276 Ill. App. 3d at 822, 658 N.E.2d at 884. The court also held Premier was entitled to a *pro rata* share of the settlement proceeds pursuant to section 28 of the Act as opposed to the full amount of its claim. *Premier Electrical*, 276 Ill. App. 3d at 822-23, 658 N.E.2d at 884.

¶ 71 In this case, the trial court found *Premier Electrical* distinguishable. The court found that case centered on section 28 of the Act, not section 27, which the court found applicable here. Further, in considering the settlement agreement between Chemical Bank and MDI in *Premier Electrical*, the court found Ahal and Blager could not be bound by settlement negotiations to which neither was a party, "settlement negotiations the sole consideration for which was the execution of mutual releases by those invited to participate."

¶ 72 We note the First District in *Premier Electrical* was not confronted with the issue of whether MDI could release Premier's lien without its consent. Thus, the case is of limited value on the issue before us. Instead, we find consideration of the Act as a whole, as well as the purpose behind the Act, leads to the conclusion that Ahal and Blager could not have their claims released without their consent.

¶ 73 "[T]he purpose of the Act is to protect contractors and subcontractors providing labor and materials for the benefit of an owner's property." *Weather-Tite*, 233 Ill. 2d at 391, 909 N.E.2d at 834. The purpose of the Act would be undermined if the owner and general contractor could enter into a mutual agreement with a subcontractor releasing any and all claims, with the result being that unknowing and unconsenting secondary subcontractors would see their lien claims vanish. Such an inequitable result cannot be countenanced by the Act, as it would result in a windfall to the general contractor and hardship to the secondary subcontractors. Thus, we find Campus and Broeren Russo's settlement with JMC had no effect on Ahal and Blager's claims.

¶ 74                            13. *The Trial Court's Ruling*

¶ 75 Now nearing the end of our lengthy analysis, we find the trial court erred granting summary judgment in favor of Ahal and Blager. Again, the Act seeks to balance the rights of owners, contractors, and subcontractors. *Bricks*, 361 Ill. App. 3d at 163, 836 N.E.2d at 748. While one purpose of the Act is to allow subcontractors to protect their interests by

obtaining a lien, "the Act also seeks to protect owners from the potential claims of subcontractors." *Bricks*, 361 Ill. App. 3d at 163, 836 N.E.2d at 749. The utilization of section 5 sworn statements from general contractors protects owners from claims of unknown subcontractors. *Bricks*, 361 Ill. App. 3d at 164, 836 N.E.2d at 749; see also *Doors Acquisition, LLC v. Rockford Structures Construction Co.*, 2012 IL App (2d) 120052, ¶ 18 (stating "the balance should be struck in favor of the owner when the owner properly relies on a section 5 sworn statement from a general contractor that a subcontractor has been paid and a lower-tier contractor is not listed, even if the lower-tier contractor later complies with the Act's requirements"). Subcontractors can protect themselves by filing a lien as soon as they agree to work on the project. *Lazar Brothers*, 365 Ill. App. 3d at 563, 850 N.E.2d at 219; see also 770 ILCS 60/24 (West 2008). "In the absence of a timely written notice to the general contractor or the owner, secondary subcontractors must bear the risk of loss from false statements made by subcontractors ***." *Season Comfort*, 281 Ill. App. 3d at 655, 655 N.E.2d at 1070.

¶ 76    As stated, we found Ahal and Blager are entitled to recovery of their *pro rata* shares of the funds remaining due to JMC on the subcontract between Broeren Russo and JMC. We find this result reaches the right balance considering the purpose of the Act. The owner should not be required to pay more than he contracted for, absent notice of subcontractors' claims. See *Brady Brick & Supply Co. v. Lotito*, 43 Ill. App. 3d 69, 72-73, 356 N.E.2d 1126, 1130 (1976) (stating that, except under certain circumstances, "the subcontractor whose claims are unpaid may not recover from the original owner a sum which will make the total cost to the owner greater than that specified in the original contract between the owner and the original contractor"). Moreover, the secondary subcontractors are not left completely without compensation for their work. Ahal and Blager can recover their *pro rata* shares of the amount owed to JMC at the time they filed their notices of lien. Moreover, they can seek to recover the balance from their immediate contractor. See *Weather-Tite*, 233 Ill. 2d at 394, 909 N.E.2d at 836 (stating " 'the sub-contractor must look to the contractor for any balance due on its claim over and above the amount withheld by the owner pursuant to the sworn statements made' " (quoting *Knickerbocker Ice Co. v. Halsey Bros. Co.*, 262 Ill. 241, 246, 104 N.E. 665, 666 (1914))). Thus, we reverse the trial court's judgment and remand for the entry of an order granting Ahal and Blager their *pro rata* shares of the $495,850 owed to their immediate contractor less any *pro rata* portion paid to Gerdau.

¶ 77                        B. Cross-Appeals of Blager and Ahal

¶ 78    In their cross-appeals, Ahal and Blager, citing section 17 of the Act (770 ILCS 60/17 (West 2008)), argue the trial court (1) abused its discretion in denying their petitions for attorney fees and (2) should have included the costs of depositions in their recoverable costs. We find these issues moot.

¶ 79    Section 17 of the Act (770 ILCS 60/17 (West 2008)) provides, in part, as follows:

    "(a) The costs of proceedings as between all parties to the suit shall be taxed equitably against the losing party ***.

    (b) If the court specifically finds that the owner who contracted to have the

improvements made failed to pay an lien claimant the full contract price, including extras, without just cause or right, the court may tax that owner, but not any other party, the reasonable attorney's fees of the lien claimant who had perfected and proven his or her claim.

\*\*\*

(d) 'Without just cause or right', as used in this Section, means a claim asserted by a lien claimant or a defense asserted by the owner who contracted to have the improvements made, which is not well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."

¶ 80 Here, our reversal of the trial court's order indicates Campus and Broeren Russo's defense was not without just cause or right. Given their compliance with section 5 of the Act and the underlying purpose of the Act, their argument was convincing, and the court erred in granting summary judgment in favor of Ahal and Blager. Based on our decision reversing the trial court, the subcontractors' claims for costs and attorney fees are now moot.

¶ 81 III. CONCLUSION

¶ 82 For the reasons stated, we reverse the trial court's judgment in Campus and Broeren Russo's appeal and remand for the entry of an order granting Ahal and Blager their *pro rata* shares of the $495,850 owed to their immediate contractor less any *pro rata* portion paid to Gerdau. In light of our decision to reverse the trial court's judgment, the issues raised in Ahal's and Blager's cross-appeals are moot.

¶ 83 Reversed and remanded with directions.